LIPP v. NATIONAL SCREEN SERVICE
CORP. et al.

SIEGEL v. NATIONAL SCREEN SERVICE
CORP. et al.

SCHRADER v. NATIONAL SCREEN
SERVICE CORP. et al.
Civ. Nos. 11136, 11137, 11138.

United States District Court
E. D. Pennsylvania.

Dec. 19, 1950.

Franklin Poul, of Gray, Anderson, Schaffer & Rome, Philadelphia, Pa., for plaintiffs.

Irving R. Segal, of Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., for defendant Eagle Lion Films, Inc.

GRIM, District Judge.

These three civil actions have been brought under the antitrust laws [1] to obtain an injunction and to recover treble damages for alleged violations of these statutes by the defendants. The plaintiff in each case is engaged in the business of leasing advertising materials to exhibitors of motion picture films. Plaintiffs, in turn, procure these materials from defendant National Screen Service Corporation and from other sources. The complaints, which are identical except as to the names of the plaintiffs, in essence charge the existence of a scheme on the part of National Screen Service Corporation to destroy plaintiffs' business. They further allege that the so-called "producer-distributor-defendants", of whom the moving defendant, Eagle Lion

---

1. Act of July 2, 1890, 26 Stat. 209, as amended, 15 U.S.C.A. § 1 et seq., Sherman Act; Act of Oct. 15, 1914, 38 Stat. 736, as amended, 15 U.S.C.A. § 12 et seq., Clayton Act.

Films, Inc. (hereinafter referred to as Eagle Lion) is one, have a financial interest in National Screen Service Corporation and that they have granted to National Screen certain exclusive contracts for the manufacture and distribution of advertising accessories relating to their respective motion pictures. All defendants in these cases, with the exception of Eagle Lion, have filed answers denying the foregoing charges and concede that as to them the actions have been properly brought in this court.

However, Eagle Lion has filed motions to dismiss the complaints as to it, contending that the venue is not proper in the actions against it.

The facts relating to the question of venue are not in dispute. Each of the motions to dismiss is supported by an identical affidavit of David J. Melamed, treasurer of Eagle Lion. These affidavits disclose the following facts: Prior to June 12, 1950, Eagle Lion, an Ohio corporation, which was in the business of distributing motion pictures, maintained its principal place of business in New York City, and occupied an office at 1225 Vine Street in Philadelphia, from which address it transacted business. Since June 12, 1950, Eagle Lion has not occupied an office in the Commonwealth of Pennsylvania. On June 12, 1950, the motion picture distribution business of Eagle Lion Films, Inc. was taken over by Eagle Lion Classics, Inc., a New York corporation, and since that date Eagle Lion has not engaged in the motion picture distribution business, but has been engaged in the process of winding up its affairs. On that same date, Eagle Lion Classics, Inc. took over from Eagle Lion occupancy of the latter's Philadelphia office. Also, on that date, Eagle Lion Classics, Inc. took over personnel of Eagle Lion and from that date Eagle Lion has not maintained any employees in Pennsylvania. Since June 12, 1950, Eagle Lion has not entered into the Eastern District of Pennsylvania nor any other part of the Commonwealth of Pennsylvania for any reason whatsoever.

However, Eagle Lion has one remaining connection with Pennsylvania. Although it is no longer engaged in business in Pennsylvania, it is still licensed to do business here as a foreign corporation, pursuant to Article X of the Business Corporation Law of 1933 P.L. 364, §§ 1001 to 1015, 15 P.S. §§ 2852—1001 to 2852—1015.[2]

The antitrust laws, pursuant to which these actions have been brought, contain special provisions regulating the venue of antitrust actions against corporations. Section 12 of the Clayton Act, 38 Stat. 736, 1914, 15 U.S.C.A. § 22, provides that: "Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found."

According to the undisputed facts regarding its activities in this judicial district, Eagle Lion is not an inhabitant of this district, may not be found in this district, and does not transact business in this district. Therefore, none of the three alternative requirements of Section 12 of the Clayton Act for venue of an action against a corporate defendant is satisfied as to Eagle Lion.

Simply stated, the question now before me is: Is the Eastern District of Pennsylvania a proper venue for these antitrust actions against defendant Eagle Lion by

---

**2.** Section 1004 of the Pennsylvania Business Corporation Law of 1933, as amended, 15 P.S. § 2852—1004, provides that an application by a foreign corporation for a certificate of authority shall set forth: * * * "(6) A designation of the Secretary of the Commonwealth and his successor in office as the true and lawful attorney of the corporation upon whom all lawful process in any action or proceeding against it may be served, that the service of process upon the Secretary of the Commonwealth shall be of the same legal force and validity as if served on the corporation, and that the authority for such service of process shall continue in force as long as any liability remains outstanding against the corporation in this Commonwealth."

virtue of the fact that it is licensed to do business as a foreign corporation in Pennsylvania, even though it is not an inhabitant (incorporated) here, is not found here, and does not transact business here?

Neirbo Company v. Bethlehem Shipbuilding Corp., 1939, 308 U.S. 165, 60 S.Ct. 153, 84 L.Ed. 167, held that when, as a prerequisite to obtaining a license to do business as a foreign corporation in a particular state, a corporation consented to be sued in the state courts of that state, it thereby waived its objection to venue requirements in diversity actions brought in the federal courts in that state. The Neirbo rule is based on the fiction of waiver of venue. The federal courts extended this fiction by applying the Neirbo rule to cases involving a federal question of which the federal and state courts have concurrent jurisdiction, such as actions under the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq., the Emergency Price Control Act, 50 U.S.C.A. Appendix, § 901 et seq., and the Jones Act, 46 U.S.C.A. § 688.

On the question whether the Neirbo rule is applicable to cases like the present case, where the federal courts have exclusive jurisdiction, there is conflicting authority in the cases.

With reference to actions over which the federal courts have exclusive jurisdiction, prior to the Judicial Code of 1948, some cases drew a distinction between actions which were subject to the general venue statute, former 28 U.S.C.A. § 112, and actions which were subject to special venue statutes, and extended the Neirbo rule of waiver of venue only to actions brought under the general venue statute. Other cases applied the Neirbo rule even to actions brought under special venue statutes, including the following antitrust cases: Giusti v. Pyrotechnic Industries, 9 Cir., 1946, 156 F.2d 351; In re Grand Jury Subpoenas Duces Tecum, D.C.S.D.N.Y. 1947, 72 F.Supp. 1013, 1021; Ball v. Paramount Pictures, D.C.W.D.Pa.1944, 57 F. Supp. 505, citing Dehne v. Hillman Investment Co., 3 Cir., 1940, 110 F.2d 456 (action subject to general venue statute).

The general venue statute prior to the new Judicial Code of 1948 was Section 51 of the Judicial Code of 1911, as amended, 28 U.S.C.A. § 112 (1940), which stated that, except as to actions predicated solely on diversity jurisdiction, "* * * no civil suit shall be brought in any district court against any person by any original process or proceeding in any other district than that whereof he is an inhabitant * * *." The Judicial Code of 1948, new Title 28, U.S.C.A., went into effect September 1, 1948. The new general venue section, comparable to former Section 112, supra, is 28 U.S.C.A. § 1391, which provides in subsections (a), (b) and (c) as follows:

" (a) A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in the judicial district where all plaintiffs or all defendants reside.

"(b) A civil action wherein jurisdiction is not founded solely on diversity of citizenship may be brought only in the judicial district where all defendants reside, except as otherwise provided by law.

" (c) A corporation may be sued in any judicial district in which it is incorporated or licensed to do business or is doing business, and such judical district shall be regarded as the residence of such corporation for venue purposes."

Sections 1391(a) and (b) are substantially the same as former Section 112. The Revisers' Note to Section 1391 states that the word "reside" was substituted for "whereof he is an inhabitant" for clarity inasmuch as "inhabitant" and "resident" are synonymous.

Section 1391(c), however, has effected a considerable modernization of general venue requirements. The residence of that elusive legal abstraction, the corporation, is carefully defined for venue purposes. The provision that a corporation may be sued in any district in which it is licensed to do business was influenced by the wide application of the Neirbo rule. This provision obviates the necessity of invoking the judicial (Neirbo) doctrine of waiver in most cases. This provision also makes moot the former

question whether the Neirbo rule is applicable to actions over which the federal courts have exclusive jurisdiction and which are subject to the general venue statute. But for the more controversial question whether the Neirbo rule is applicable to actions of exclusive federal jurisdiction which are subject to special venue statutes, Section 1391(c) merely substitutes another question, namely, whether the general venue provisions of Section 1391(c) are applicable to those special venue statutes where venue of actions against corporate defendants is geared to, or dependent on, their residence.

The narrow question presented by the present case is whether Section 1391(c) of Title 28 U.S.C.A. modifies Section 12 of the Clayton Act so as to make proper the venue of an antitrust action against a foreign corporation in a judicial district of the state in which the foreign corporation is licensed to do business.

The cryptic Revisers' Note to Section 1391 and the legislative history of this section shed no light on this question. Perhaps no man is better qualified to give the further illumination needed than Professor James W. Moore, who was a special consultant to the revisers of the Judicial Code as well as chief research assistant to the reporter to the Supreme Court's advisory Committee on Federal Rules of Civil Procedure and author of the authoritative Moore's Federal Practice.[3] Moore, on pages 178 and 179 of his Commentary on the U. S. Judicial Code (1949), states: "The coverage of new Title 28 in relation to special venue is approximately the same coverage of former Title 28, although there has been a consolidation of some former statutory provisions, and some clarification and improvement. Other titles of the United States Code must, therefore, be consulted to determine the venue of many actions. But, and this is very important, all special venue provisions, whether within Title 28 or some other title, must be read in connection with the following general provisions: * * * 2. 'A corporation may be sued in any judical district in which it is incorporated or licensed to do business or is doing business, and such judicial district shall be regarded as the residence of such corporation for venue purposes.' "

And at pages 192 and 193 of his Commentary, Moore explains: "Prior to the Code a corporation was a resident of the state in which it was incorporated; and, more specifically, where the state of incorporation was divided into two or more districts, then in the district where its official residence was designated by the Charter or state law and, in the absence of such a designation, then in the district where the corporation maintained its home office. The Code has made no change in this rule relative to the residence of a corporate *plaintiff*. For venue purposes it has, however, radically altered the rule relative to a corporate *defendant*. Section 1391(c) * * * is a provision of general applicability to a corporate defendant, whether the case be one governed by a general venue provision, or by a special venue provision within Title 28, such as Sec. 1400(b) governing a patent infringement action,[4] or by a special venue provision contained in some other title of the United States Code."

The last clause covers the question now before this Court. In the present case the "special venue provision contained in some other title of the United States Code" to which Section 1391(c) is applicable is Section 22 of Title 15, Section 12 of the Clayton Act. Judge Ryan, in Auburn Capitol Theatre Corp. v. Schine Chain Theatres, D.C.S.D.N.Y.1949, 83 F.Supp. 872, at page 874, referring especially to Section 1392[5] but also to Section 1391(c), states:

"Anti-trust plaintiffs are not deprived of the benefits of these general venue provisions. * * * The venue provisions of the anti-trust laws were enacted to give anti-trust plaintiffs special venue privileges in addition to those granted by general

3. See Title 28 U.S.Code Cong. Serv., 80th Cong. 2d Sess., P. 1965.

4. But see Nachtman v. Jones & Laughlin Steel Corp., D.C.1950, 90 F.Supp. 739.

5. "Any civil action, not of a local nature, against defendants residing in different districts in the same State, may be brought in any of such districts."

venue statutes. United States v. National City Lines, 334 U.S. 573, 68 S.Ct. 1169 [92 L.Ed. 1584]; they were intended to facilitate the prosecution of anti-trust actions, not to replace or make unavailable general venue provisions."

There is no rule of statutory construction which would restrict the applicability of Section 1391(c)'s definition of residence of defendant corporations for venue purposes to the other subsections of 1391, namely, 1391(a) and (b), quoted supra, which regulate the venue for all civil actions except those subject to special venue statutes. Cf. Ex parte Collett, 1949, 337, U.S. 55, 58–59, 69 S.Ct. 944, 93 L.Ed. 1207; United States v. Nat. City Lines, 1949, 337 U.S. 78, 80–81, 69 S.Ct. 955, 93 L.Ed. 1226.

■ It should be pointed out that anti-trust defendants are adequately protected against being forced to defend suits in inconvenient forums by the transfer of venue section of the Judicial Code, 1404(a); United States v. Nat. City Lines, supra; Paramount Pictures, Inc., v. Rodney, 3 Cir., 186 F.2d 111.

■ Therefore, under Section 12 of the Clayton Act as modified by Section 1391(c) of the Judicial Code, Eagle Lion, because it is licensed to do business as a foreign corporation in Pennsylvania, is subject to the present antitrust actions brought in this District Court for the Eastern District of Pennsylvania.

Accordingly, defendant Eagle Lion's motions to dismiss the complaints as to it are denied.