## BERTHA BLDG. CORP. v. NATIONAL THEATRES CORP.

## GUMBINER THEATRICAL ENTERPRISES, Inc. v. NATIONAL THEATRES CORP.

### Civ. Nos. 12073, 12074.

United States District Court
E. D. New York.

Feb. 21, 1952.

Dwight, Royall, Harris, Koegel & Caskey, New York City (Charles F. Young, New York City, of counsel), for plaintiffs.

Corcoran & Kostelanetz, New York City (Boris Kostelanetz and Rexford E. Tompkins, New York City, of counsel), for National Theatres Corp.

KENNEDY, District Judge.

These actions are brought under the antitrust laws of the United States. They were begun on September 5, 1951, and in both cases the defendant was served with process in the Southern District of New York. In neither case does the defendant do any business within the Eastern District of New York. But defendant is a foreign corporation licensed to do business within the state of New York.

Defendant moves pursuant to Section 12 of the Clayton Act, 15 U.S.C.A. § 22, for orders dismissing the actions on the ground of improper venue, or in the alternative for orders transferring both causes to the Southern District of New York pursuant to the appropriate code section. 28 U.S. C.A. § 1406(a). In other words, both motions raise the same question: is the venue jurisdiction proper?

It is clear that venue is not here properly laid under the section of the Clayton Act specifically applicable, 15 U.S.C.A. § 22. Defendant is not "an inhabitant" of this district, is not "found" here, and does not "transact business" here. But plaintiffs say this district has venue jurisdiction under the general venue statute. 28 U.S.C.A. § 1391(c). That statute, so far as it is pertinent here, provides as follows: "A corporation may be sued in any judicial district in which it is incorporated or licensed to do business or is doing business, and such judicial district shall be regarded as the residence of such corporation for venue purposes.

As I have hinted, defendant argues that the general statute, just quoted, is not applicable at all. It says that where Congress has, for a particular type of action, provided a particular rule of venue, then the plaintiff must bring himself within that specific statute. Plaintiffs say that where Congress has enacted a general venue statute and also a specific one, they may sue in any district which comes within the description of either statute. One can well understand how an answer either way to these contentions could be sustained on logical grounds. However, I shall not labor the point because there are some decided cases which I find persuasive. Lipp v. National Screen Service Corp., D.C.E.D.Pa. 1950, 95 F. Supp. 66; Auburn Capitol Theatres Corp. v. Schine Chain Theatres, D.C.S.D.N.Y. 1949, 83 F.Supp. 872. I have not over-

looked the criticism which the defendant makes of these decisions. For even if the matter were *res integra* I would reach the conclusion that when Congress affords a plaintiff-litigant the opportunity to sue in a prescribed district because of the existence of a specific federal question (arising under the anti-trust laws), and also in another statute gives wider latitude where *any* federal question exists, it would be a narrow technicality to close the doors of the courts of the latter district unless Congress had given some indication that this was its intention, which here it did not. The question, I admit, is not free from difficulty because apparently in cases under the patent laws Congress has evinced an intention to restrict venue jurisdiction[1] whereas in cases under the Jones Act most of the decisions take the position that it has not. But I find no reason why a suitor under the anti-trust laws should by implication be unduly fettered by venue provisions, particularly since cases of harassment can be dealt with under the *forum non conveniens* theory.

Assuming that I am right, and that plaintiffs are entitled to invoke the venue provisions of 28 U.S.C.A. § 1391(c), there still remains a somewhat perplexing question. That section (quoted above) permits a corporate defendant to be sued in a judicial district (1) where it is incorporated, or (2) licensed to do business, or (3) doing business. Defendant is not incorporated in the Eastern District nor is it doing business here. It is, however, licensed to do business in the State of New York. Does that bring this district within the statutory description of a "district" where the defendant is "licensed to do business"?

It must be acknowledged that there are at least three cases in this district which either suggest or hold that the question must be answered in the negative. (Judge Galston in Wood v. Pennsylvania Greyhound Lines, D.C.E.D.N.Y.1949, 86 F.Supp. 91; Chief Judge Inch in Kibler v. Trans-Continent & Western Air, D.C.E.D.N.Y. 1945, 63 F.Supp. 724; and Judge Abruzzo in Hill v. New England Greyhound Line, D.C.E.D.N.Y.1939.[2]) It will be observed that both Judge Inch's case and Judge Abruzzo's case were decided prior to the 1948 amendment. And in the Wood case, decided by Judge Galston, it is true that there were some special circumstances which may or may not be controlling, i. e., the defendant was prohibited against doing business in the Eastern District of New York and therefore even though it was licensed to do business in the state, that fact may possibly have had some effect upon Judge Galston's conclusion.

Here again, on principle, it is easily possible to sustain either one of the arguments of counsel, which were, by the way, set forth in very thorough briefs. Defendant argues that to hold a corporation suable in a district where it does no business produces two anomalous results: (1) wider jurisdiction is given over a foreign corporation than over a domestic corporation because the latter would be suable only in the district of its incorporation, and (2) wider jurisdiction would be given over a licensed than over an unlicensed corporation because the latter would be suable only in the district where it did business, whereas the former, under the plaintiffs' theory, could be sued in any district of the state.[3] Plaintiffs, on the other hand, point to the precise language of the statute and say that if defendant's contention is sound then the branch of the venue-jurisdiction statute which speaks of licensed corporations is wholly unnecessary. That is to say, they point out that if the statute means what defendants say it does, a domestic corporation is suable in the district of its incorporation, and a foreign corporation only in the district where it does business, which makes it unnecessary to mention anything about licenses, because

---

1. Professor Moore does not agree with this: see passage quoted in the Lipp case, 95 F.Supp. 66, 69.

2. No opinion for publication.

3. A similar anomaly under the former statute was noted in Moss v. Atlantic Coast Line R. Co., 2 Cir., 1945, 149 F.2d 701. There a foreign corporation, doing business without a license got off scot free where a domesticated foreign corporation would have been subject to the venue jurisdiction.

714

the venue would not exist in any case unless the corporation were doing business in the particular district where suit was brought.

If this were a mere question of parsing the statute I would hold that when Congress made it possible to sue a corporation "in any judicial district in which it is * * * licensed to do business" it must have had something in mind, and in all probability intended to widen prior venue-jurisdiction to cover cases exactly like this one.

But I am not sure that there is not also judicial gloss on the meaning of "licensed to do business" which is useful here. I admit that on its facts the Neirbo doctrine of waiver is not determinative of this case, Neirbo Co. v. Bethlehem Corp., 1939, 308 U.S. 165, 60 S.Ct. 153, 84 L.Ed. 167, because there, as I understand it, the defendant was sued in the district which it had designated as the residence of its local agent, whereas here that is not so. However, in Barnes v. Wilson, D.C.E.D.Wis. 1941, 40 F.Supp. 689, 691 a consent to suit filed by licensed foreign corporations was treated as "state-wide" consent. And Judge Leibell (Cleverly v. Nelson,[2] S.D. N.Y., 1949), reads the revised statute, 28 U.S.C.A. § 1391(c), to mean that venue can be laid in any judicial district of the state which has issued the license.

When, moreover, this defendant domesticated itself it did so under acts, New York General Corporation Law, McKinney's Consol. Laws, c. 23, Article 13, § 210, subd. 1; New York Stock Corporation Law, McKinney's Consol.Laws, c. 59, Article 3, § 24(A), whereunder it designated an agent "upon whom process in any action or proceeding against it may be served *within this state.*" (Emphasis added.) It is all very well to refer to this as a mere process-jurisdiction statute but Congress in reframing the venue statute, 28 U.S.C.A. § 1391(c), must surely have been aware of the fact that states do not license corporations to do business in any particular judicial district: that the certificate of domestication gives a corporation a license to do business in *any* judicial district. The consent to the service of process is not limited to actions in the *state* court brought under the venue of the judicial district where the agent has his official address. What else could have been intended by Congress except to harmonize federal venue requirements and process requirements with each other, and with those operative in most of the states?

Congress must surely also have known that a flood of litigation had turned on the question of what constitutes doing business and on the Neirbo waiver doctrine: and the whole trend, I think, was towards the elimination or reduction of venue-jurisdiction complications when the code was revised in 1948. The only conclusion I can reach is that when Congress made a foreign corporation suable "in any judicial district in which it is * * * licensed to do business" Congress meant *what it* said, and therefore that the venue here is properly laid under the section in question.

The motions to dismiss the actions or in the alternative to transfer them to the Southern District are accordingly denied. There are still some questions concerning discovery which I will take up with counsel, if they wish, at such time as they may agree upon.

---

2. No opinion for publication.