**STATE OF NEW YORK**

v.

**MORTON SALT COMPANY, International Salt Company, Cayuga Rock Salt Company, Highway Materials Co., Inc.**

**CITY OF PHILADELPHIA, PENNSYLVANIA, a municipal corporation, on behalf of itself and all others similarly situated**

v.

**MORTON SALT COMPANY et al.\***

**MUSKEGON COUNTY ROAD COMMISSION and related actions**

v.

**MORTON SALT COMPANY et al.\***

Civ. A. Nos. 40919, 33781, 37159–37169, 37173, 37174.

United States District Court
E. D. Pennsylvania.

April 5, 1967.

---

\* By order of April 6, 1967 the opinion and order in Civ.A. No. 40919 were made applicable to this action.

See also D.C., 248 F.Supp. 506.

David Berger, Philadelphia, Pa., for plaintiffs.

Donald Brown, Philadelphia, Pa., for defendant Cayuga Rock Salt Co.

John E. Marx, Michael A. O'Pake, Reading, Pa., for defendant Highway Materials Co., Inc.

## OPINION

JOSEPH S. LORD, III, District Judge.

Plantiffs seek to recover damages under the Clayton Act, 38 Stat. 731 (1914), 15 U.S.C.A. § 15, for the defendants' alleged conspiracy to establish, maintain and fix the price of rock salt. Interrogatories propounded by the plaintiffs for the specific purpose of establishing venue in this district were objected to by defendants Cayuga Rock Salt Company ("Cayuga") and High-

way Materials Co., Inc. ("Highway"). By stipulation the parties have resolved most of the original objections. We have before us the two areas of dispute which still remain.

Both defendants object to interrogatories which require of them information and data on business activities in the Middle and Western District of Pennsylvania. They argue that the geographical scope of the interrogatories is unjustifiably broad in view of their limited purpose of establishing venue in this district. Highway alone raises the further objection that its business activities in this district before the date this suit was commenced are not germane to the venue problem, and that the interrogatories should be so limited. For reasons set forth below we overrule the objections of Highway and Cayuga to the geographical scope of plaintiffs' interrogatories, and overrule Highway's objections to interrogatories seeking information on its business activities before the suit was filed.

■ While the federal rules distinguish between relevancy in the trial sense and relevance to the subject matter, Griffin v. Memphis Sales & Mfg. Co., 38 F.R.D. 54 (D.C. Miss. 1965), nevertheless, lengthy interrogatories requiring equally lengthy answers should not be permitted. Thus, here, although the problem is presented in the context of a discovery motion, we must decide now the underlying and important problem of venue in order to rule on the discovery motion. Simply stated: if defendants' activities in the Middle and

Western Districts provide Eastern District venue, the interrogatories are proper; if they do not, they are not.

The defendants contend that the Clayton Act's venue provisions, 15 U.S.C.A. § 22,[1] provide the sole criteria for establishing venue against a corporation in a private antitrust suit. Plaintiffs, while conceding the applicability of 15 U.S.C.A. § 22, argue that the general venue provisions of the Judicial Code, in particular 28 U.S.C.A. §§ 1391(c) and 1392(a),[2] can be read as venue provisions complementary to the special provisions of the Clayton Act.

The most recent Supreme Court decision, Pure Oil Company v. Suarez, 384 U.S. 202, 203, 86 S.Ct. 1394, 16 L.Ed.2d 474 (1966), on the relationship between the general venue provisions of the Judicial Code and the special venue provisions of various statutes does not specifically touch Clayton Act venue. It does, however, demand that we take a fresh look at the requirements for venue in an antitrust case as they have developed since the Judicial Code of 1948 was enacted.

In one of the early interpretations of the venue provisions of the Judicial Code of 1948, the late Judge Allan K. Grim of this court ruled that Section 1391(c) of 28 U.S.C.A. did indeed apply to antitrust suits despite the special venue provisions of the Clayton Act. Lipp v. National Screen Service Corp., 95 F.Supp. 66 (E.D.Pa.1950). Judge Grim pointed out that neither the Revisor's Note nor the legislative history of that section provided much help on the question. However, Judge Grim noted that Professor James

1. 15 U.S.C.A. § 22: *"District in which to sue corporation.* Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found." 38 Stat. 736.

2. 28 U.S.C.A. § 1391(c): *"Venue generally.* * * * (c) A corporation may be

sued in any judicial district in which it is incorporated or licensed to do business or is doing business, and such judicial district shall be regarded as the residence of such corporation for venue purposes."

28 U.S.C.A. § 1392(a): *"Defendants or property in different district in same State.* (a) Any civil action, not of a local nature, against defendants residing in different districts in the same State, may be brought in any of such districts." 62 Stat. 935.

W. Moore, a special consultant to the Code's Revisors, had said:

"* * * Section 1391(c) * * * is a provision of general applicability to a corporate defendant whether the case be one governed by a general venue provision, * * * or by a special venue provision contained in some other title of the United States Code." (Moore, Commentary on the U. S. Judicial Code (1949) at pp. 192 and 193).

There had been many other decisions during the 1950s which applied §§ 1391 (c) and 1392(a) to antitrust actions. See Sunbury Wire Rope Mfg. Co. v. United States Steel Corp., 230 F.2d 511 (C.A.3, 1956); Noerr Motor Freight, Inc. v. Eastern R. R. Presidents Conference, 113 F.Supp 737 (E.D.Pa.1953); Bertha Bldg. Corp. v. National Theatres Corp., 103 F.Supp. 712 (E.D.N.Y.1952); Auburn Capitol Theatre Corp. v. Schine Chain Theatres, Inc., 83 F.Supp. 872 (S.D.N.Y.1949).

However, in 1957 the Supreme Court was faced with a case which required a ruling on the interrelation of 28 U.S.C.A. § 1391(c) and the special venue provisions applicable to patent infringement suits, 28 U.S.C.A. § 1400(b) (1964 ed). The Court held that the definition of "residence" in the general venue provision (§ 1391(c)) did not apply to the special venue provision (§ 1400 (b)). Fourco Glass Co. v. Transmirra Prods. Corp., 353 U.S. 222, 77 S.Ct. 787, 1 L.Ed. 2d 786 (1957). Thereafter, the district courts frequently relied on Fourco as authority for the proposition that the general venue provisions of the Judicial Code could not be employed when there was an applicable special venue statute. Kaeppler v. James H. Matthews & Co., 180 F.Supp. 691 (E.D.Pa.1960); Crawford Transportation Co. v. Chrysler Corp., 191 F.Supp. 223, 225 (E.D.Ky.

1961); Goldlawr, Inc. v. Shubert, 169 F.Supp. 677 (E.D.Pa.1958).

In a Jones Act case in this Circuit, Leith v. Oil Transport Company, Inc., 321 F.2d 591 (1963), the court held that the general venue statute's definition of "residence" could not be grafted onto the special provisions of the Jones Act. To resolve a conflict among the holdings of the Third, Fourth and Fifth Circuits on this narrow point, the Supreme Court granted certiorari in Pure Oil Company v. Suarez, 382 U.S. 972, 86 S.Ct. 549, 15 L.Ed.2d 464 (1965). The Supreme Court's decision in Pure Oil, 384 U.S. 202, 203, 86 S.Ct. 1394, was that the general venue provisions could be referred to for an expanded definition of the "residence" concept used in the Jones Act's special venue provisions. "[I]t is unlikely," said Mr. Justice Harlan, "that the Congress meant to infuse the concept of corporate residence with any special meaning that should remain impervious to changes in standards effected by the more general venue statutes." 384 U.S. at p. 207, 86 S.Ct. at p. 1397.

Counsel for Highway and Cayuga have urged us to view this recent decision in its most narrow sense; viz., special statutes having their own venue provisions and using "residence" as a criteria may now be viewed in terms of the definition of "residence" used in 28 U.S.C.A. § 1391(c). They go on to argue that Pure Oil has no application to the case at hand because the Clayton Act, 15 U.S.C.A. § 22, does not rely upon a "residence" criterion. We believe this reasoning overlooks two points.

First, the Clayton Act does employ the word "inhabitant" which was deemed by the Revisor of the Judicial Code to be synonymous with "resident".[3] This alone might bring the general venue statute into play, at least for the purpose of expanding the definition of "inhabitant". The second—and more compelling—point

---

**3.** The Revisor's Note to 28 U.S.C.A. § 1391 states in part: "Word 'Reside' was substituted for 'whereof he is an inhabitant' for clarity inasmuch as 'inhabitant' and 'resident' are synonymous".

Section 22 of 15 U.S.C.A., of course, employs almost the exact phrase mentioned by the Code's Revisor: "* * * whereof (it) is an inhabitant * * *."

is that in *Pure Oil* the Supreme Court was forced to distinguish the *Fourco* case so that today *Fourco* is authority only for the proposition that the general venue provisions of the Code do not apply to actions for patent infringement. By implication, all of the antitrust venue decisions which supposedly were upset by *Fourco* can now be resurrected, as justly they should be.

■ The conditions and forces which impelled passage of the Sherman Act, 26 Stat. 210 (1890) and Clayton Act, 38 Stat. 731 (1914), are part of the history of another day. It is important to remember, however, that impetus for the Clayton Act venue provisions came from the difficulties encountered in establishing venue under the Sherman Act, and there is no doubt that the Congressional intent was to promote a wide choice of venue in Clayton Act antitrust actions. United States v. Scophony Corp. of America, 333 U.S. 795, 68 S.Ct. 855, 92 L.Ed. 1091 (1948); Eastman Kodak Co. v. Southern Photo Materials Co., 273 U.S. 359, 374, 47 S.Ct. 400, 71 L.Ed. 684 (1927). It may be logical in patent cases to infer a Congressional intent to limit, rather than to expand venue, for § 1400 of Title 28 U.S.C.A. [formerly § 48 of the Judicial Code, 28 U.S.C. (1940 ed.) § 109] "was a restrictive measure limiting a prior, broader venue", Stonite Products Company v. Melvin Lloyd Co., 315 U.S. 561, 566, 62 S.Ct. 780, 783, 86 L.Ed. 1026 (1942), and was "enacted * * * specifically to narrow venue in such suits." Pure Oil Co. v. Suarez, 384 U.S. 202, 203, at p. 207, 86 S.Ct. 1394, at p. 1397. No such intent can be inferred as to antitrust venue in light of the clearly discernible Congressional aim to place antitrust litigants in a favored position.

"While the legislative history of the patent venue provisions may demonstate an intention to make them exclusive, the history surrounding the passage of section 12 [of the Clayton Act] indicates an express intent to expand venue. Where the purpose of a special statutory provision is to limit rights, a sound basis exists for stating that the more general provision is inapplicable. But where the special provision is intended to confer greater benefits than the general provision encompasses, it is reasonable to conclude that the former supplements rather than supplants the latter. This distinction in the respective purposes of the two statutes had been recognized in the cases decided before Fourco." 37 N.Y.U.L.R. 268, 274 (1962).

The decisions between *Fourco* and *Pure Oil* resulted in a judicial anomaly: a liberal choice of venue was available in actions involving ordinary federal litigation while antitrust actions, especially favored by the Congress, met with venue objections based on the Clayton Act itself, the very law which was passed to liberalize venue.

Quite aside from the unmistakable intention of Congress to favor antitrust litigants, the trilogy of *Pure Oil, Fourco* and *Stonite* point out unmistakably the direction we must take.

*First.* In *Stonite,* the question was, as here, whether § 1392(a) is applicable where a statute contains a special venue provision. In *Fourco,* the question was, as in *Pure Oil,* whether the definition of corporate residence in § 1391(c) should be applied to a special venue statute. And in *Fourco,* Mr. Justice Whittaker stated that the question presented there was "not legally distinguishable" from that presented in *Stonite.* If this is so,— and it certainly is,—the question presented here is "not legally distinguishable" from that presented in *Pure Oil. Stonite* and *Fourco* were distinguished in *Pure Oil* for reasons uniquely appropriate to patent infringement cases. No such grounds are present here. This case remains "not legally distinguishable" from *Pure Oil* and the conclusion must be the same.

*Second.* The view taken in *Pure Oil* was that the thrust of the Jones Act "was not primarily directed at venue, but rather at giving seamen substantive rights and a federal forum for their vindication." 384 U.S. at p. 205, 86 S.Ct. at p. 1396. The same can be said

with equal or greater force of the Clayton Act, again with the same result.

*Third.* In distinguishing *Fourco* and *Stonite,* the Court pointed out in *Pure Oil* (384 U.S. at p. 206, 86 S.Ct. at p. 1396) that:

"First, the patent venue section at issue in Fourco was itself revised in 1948 in the same Act that contained § 1391(c). Fourco did not directly concern itself with the scope of § 1391(c). Rather, the Court inquired into the evidence revealing congressional purpose with respect to changes in § 1400(b), and concluded that Congress wished it to remain in substance precisely as it had been before the revision. This legislative background of § 1400(b) is of no relevance of course to a determination of the effect of § 1391(c) on the Jones Act, for the latter's venue provision was not re-enacted contemporaneously with § 1391(c). Thus, there is nothing to show a congressional purpose negativing the more natural reading of the two venue sections together. * * * "

Precisely the same reasoning applies to the Clayton Act venue section.

■ The foregoing considerations lead us to conclude that § 1392(a) of the Judicial Code complements the Clayton Act venue provisions. The interrogatories are therefore highly relevant and the defendants' objections to their geographic scope will be overruled.

Highway argues further that interrogatories addressed to the period before suit was filed are irrelevant. It is true that § 12 of the Clayton Act (15 U.S. C.A. § 22), permitting venue where defendant "transacts business," "speaks in the present tense." Stern Fish Co., Inc. v. Century Seafoods, Inc., 254 F.Supp. 151, 154 (E.D.Pa.1966). So, indeed, do the general venue provisions (28 U.S.C.A. § 1391(c),—"is doing business," and 28 U.S.C.A. § 1392(a),—"residing in different districts of the same State"). However, it is essential to recognize the context in which the question here arises. This is not a venue motion; it is a dis-

covery motion. We are not here called upon to decide whether Highway ever "did business" in Pennsylvania, and if so, whether it had ceased before suit was started, or even if that is a presently relevant consideration. We are called upon only to decide the relevance of plaintiffs' interrogatories. We think they are relevant.

■ Whether we address ourselves to the Clayton Act criterion of where defendant "transacts business" or the general venue statute test of "is doing business," the result is the same. Both require "more than a few isolated and peripheral contacts with the particular judicial district." Stern Fish Co., Inc. v. Century Seafoods, Inc., supra. In Eastman Kodak Co. of N. Y. v. Southern Photo Materials Co., 273 U.S. 359, at page 373, 47 S.Ct. 400, at page 403 (1926), the Court said:

" * * * a corporation is engaged in transacting business in a district, within the meaning of this section, in such sense as to establish the venue of a suit—although not present by agents carrying on business of such character and in such manner that it is 'found' therein and is amenable to local process,—if in fact, in the ordinary and usual sense, it 'transacts business' therein of any substantial character. * * * "

And in United States v. Scophony Corporation of America, 333 U.S. 795, at page 807, 68 S.Ct. 855, at page 862 (1948), Mr. Justice Rutledge said:

" * * * The practical, everyday business or commercial concept of doing or carrying on business 'of any substantial character' became the test of venue. * * * "

■ Hence, plaintiffs must show activities by defendants which evidence a degree of continuity and substantiality. Again, we emphasize that we are not now deciding the venue question; we are only deciding what is relevant to meet the tests when the venue question arises. If plaintiffs can show continuous and substantial activities by defendant with-

in the relevant district, venue requirements will be satisfied. We think that business conduct before the institution of suit is a relevant consideration. This is not to say that venue will necessarily be satisfied by a showing of defendant's activities before suit. We are saying only that what defendant did before suit may have some relevancy to show what it was doing at the time of suit.

. ■ Although we have concluded that the general venue provisions of the Judicial Code apply to Clayton Act suits, we have not referred to the recent amendment to § 1391(b) of the Code. The parties have not argued this Section, and for the limited purposes of this discovery motion, not in itself a challenge to venue, we find it unnecessary to discuss it, having already otherwise found temporal relevance.

### ORDER

And now, April 5, 1966 it is ordered that defendants' objections to plaintiffs' interrogatories relating to venue be and they hereby are overruled.