BOARD OF COUNTY COMMISSIONERS OF the COUNTY OF CUSTER, and J. D. Metcalfe, Inc., an Oklahoma Corporation, for themselves and for all others similarly situated, Plaintiffs-Appellants,

v.

WILSHIRE OIL COMPANY OF TEXAS, a corporation, et al., Defendants,

Including Mid-America Refining Co., Inc., Defendant-Appellee.

No. 74–1553.

United States Court of Appeals, Tenth Circuit.

Argued May 2, 1975.

Decided June 11, 1975.

Rehearing Denied July 25, 1975.

John A. Claro, Barefoot, Moler & Claro, Oklahoma City, Okl. (Larry Derryberry, Atty. Gen., State of Oklahoma, James Gray, Asst. Atty. Gen., State of Oklahoma, and Bert Barefoot, Jr., Edward H. Moler, and Joseph A. Claro, Barefoot, Moler & Claro, Oklahoma City, Okl., on the brief), for plaintiffs-appellants.

Lee B. Thompson, Cantrell, Douglass, Thompson & Wilson, Oklahoma City, Okl. (John H. Cantrell, Cantrell, Douglass, Thompson & Wilson, Oklahoma City, Okl., on the brief), for defendant-appellee, Mid-America Refining Co., Inc.

Before LEWIS, Chief Judge, and BARRETT and DOYLE, Circuit Judges.

DOYLE, Circuit Judge.

This is one facet of an antitrust suit which was brought under § 1 of the Sherman Act, 15 U.S.C. § 1. The essence of the action was the alleged conspiracy engaged in by the defendants to fix the price of liquid asphalt. Two other cases involve several of the same defendants named in the present action and also the same conspiracy. *See* Standard Industries, Inc. v. Mobil Oil Corp., 475 F.2d 220 (10th Cir.), *cert. denied,* 414 U.S. 829, 94 S.Ct. 55, 38 L.Ed.2d 63 (1973); United States v. Wilshire Oil Co., 427 F.2d 969 (10th Cir.), *cert. denied,* 400 U.S. 829, 91 S.Ct. 58, 27 L.Ed.2d 59 (1970).

The complaint (which was filed in the Western District of Oklahoma) alleged that the conspiracy occurred starting in 1948 and continuing to December 31, 1968. The sole questions here presented are concerned with the validity of venue in the United States District Court for the Western District of Oklahoma in view of the fact that the appellee Mid-America Refining Company is a Kansas

corporation having its home office in Chanute, Kansas. Throughout the business dealings in question Mid-America made assiduous efforts to avoid any appearance of doing business in Oklahoma. To show that Mid-America had done or transacted business in Oklahoma, plaintiffs offered extensive evidence of business dealings which culminated in that state.

Substituted service was had on Mid-America and it promptly moved to dismiss, claiming improper venue. The trial court first held on February 7, 1973 that the evidence was insufficient to support a conclusion that venue existed in the Western District of Oklahoma. It did not issue a decision, however, until further discovery had been completed. Then, on June 27, 1974, the defendant's motions to quash and dismiss for improper venue were granted. The court found that the defendant had transacted business in fact and in law in the Northern District of Oklahoma, but went on to hold that this was insufficient to constitute venue in the *Western* District of Oklahoma where the suit had been filed. In reaching this conclusion the court ruled that the general venue statutes contained in the Judicial Code, 28 U.S.C. §§ 1391 and 1392, were inapplicable.

The court's finding that Mid-America's business contacts within the Northern District of Oklahoma were sufficient in law is not disputed by the plaintiffs. It is the court's ruling that this did not justify venue in the Western District of Oklahoma which is challenged. Plaintiffs maintain that 28 U.S.C. § 1392(a) is fully applicable.[1]

The trial court ruled that this section did not apply to the present case; that venue in this, an antitrust suit, was governed exclusively by 15 U.S.C. § 22, a provision of the Clayton Act which provides for suits to be brought under the antitrust laws in the judicial district where the corporation is an inhabitant, but also in any district wherein it is found to be doing or transacting business. The trial court in effect determined that this section is restrictive in that it does not permit the general venue statute, § 1392(a), which allows an action against defendants residing in different districts in the same state to be brought in one of such districts even though one of the defendants did not reside there, to supplement § 22. The determinative issue for our consideration is whether the transacting of business in one district enables the bringing of suit in another within the state.

There are other questions as to whether business must have been done or transacted as of the time of the filing of the action or whether it is sufficient to show that the corporation transacted business prior thereto in Oklahoma and the cause of action arose as of that time in order for venue to arise.

### I.

It is undisputed that Mid-America had no office in Oklahoma; owned no property there; was not incorporated in Oklahoma nor licensed to do business in Oklahoma. In view of this, the business facts adduced in the proceedings below become highly pertinent. The dealings are extensive.[2]

---

1. This section reads:

   (a) Any civil action, not of a local nature, against defendants residing in different districts in the same State, may be brought in any of such districts.

2. These are as follows:

   1. From 1957 to 1961, Mid-America had an exclusive dealing arrangement with Anchor Petroleum Company of Tulsa (in the Northern District of Oklahoma) by which Mid-America sold its entire asphalt production to Anchor. Mid-America knew the asphalt was to be taken to the Northern District, but it had no control after delivery in Kansas.

   2. In 1961 Anchor assigned the contract to Mobil Oil Company. The contract expired in 1962, but the arrangement was continued, by verbal agreement, until October 1969. Mobil was not required to purchase the entire output of Mid-America. As with Anchor, delivery took place in Kansas. Mr. Cunningham stated that he had no knowledge concerning where Mobil took and sold the asphalt.

   3. From 1959 until 1964, Mid-America sold asphalt to Monarch Asphalt Company of Tulsa, knowing it would be taken to Tulsa and within the Northern District. Mid-America sold about three million gallons at six or seven cents a gallon to Monarch during this period.

■ Do the several contacts outlined above constitute the transaction of business within the meaning of 15 U.S.C. § 22? The Supreme Court's decision in United States v. Scophony Corp., 333 U.S. 795, 808, 68 S.Ct. 855, 92 L.Ed. 1091 (1948) provides the decisional approach. It holds that in determining whether a corporation is transacting business within a district, practical business conceptions are to be considered rather than hair-splitting legal technicalities. It is not a lawyer's contest. Mid-America contends that inasmuch as all of the transactions were completed at Chanute, Kansas, that in law it did not transact business in the Northern District of Oklahoma. The fact, however, that these sales were technically completed at the time of delivery does not change the important fact that asphalt produced in Kansas was being regularly sold and used in Oklahoma.

B. J. Semel Associates, Inc. v. United Fireworks Mfg. Co., 122 U.S.App.D.C. 402, 355 F.2d 827 (1965) is similar to our case. There the plaintiff, a major customer of defendant (which was an Ohio corporation), sued in the District of Columbia. The deliveries as in our case had been made F. O. B. Dayton, Ohio. The court said:

[A]ppellee's chief reliance . . . is upon the circumstance that deliveries of the goods sold were, in these cases, made for the seller's account to the buyer's place of business. We, however, are unable to believe that the spirit of *Scophony* [United States v. Scophony Corp., 333 U.S. 795, 68 S.Ct. 855, 92 L.Ed. 1091 (1948)] comports with allowing the seller's shipping practices to determine his amenability to suit under Section 12. Were it otherwise, F.O.B. would always, and without more, compel the buyer to litigate on the seller's home grounds—the very result which Congress sought to avoid in Section 12.

355 F.2d at 831–32.

In *Semel,* as in the instant case, the argument was primarily legalistic. To allow, however, a device of this sort to prevail would create an artificial escape from suit which could produce unjust results.

Mid-America was also shown to have purchased a substantial quantity of goods in the Northern District between

4. From November 1968 to November 1970 Mid-America sold asphalt to Arrowhead Asphalt Company of Picher, Oklahoma (Northern District), knowing it was to be taken to the Northern District. As with its other sales, delivery occurred in Kansas.

5. During October through December 1969 and February through May 1970, Mid-America sold some asphalt to Fowler Transport of Chanute, Kansas, knowing it would be transported to the Northern District of Oklahoma.

6. In January 1964, July 1964 and January 1969, Mid-America made sales of crude oil from its Southeast Kansas Stripper Field to Sinclair Oil Corp. of Tulsa, Oklahoma. The last sale was for more than 200,000 barrels at $2.98/barrel, to be delivered throughout the year. There is no indication where the oil was ultimately sent.

7. There is correspondence indicating that in 1964 and throughout 1969, Mid-America sold oil (delivered in Kansas) to the Pan American Petroleum Corporation of Tulsa. Mr. Cunningham's expense accounts show trips to Tulsa in August 1964 and August 1965 with reference to Pan American Oil Corporation.

8. In April 1969, Mid-America informed the Oklahoma Tax Commission that in connection with the purchase of a business in Kansas, it had purchased crude oil from three counties in the Northern District of Oklahoma, and asked for information about requirements for purchase of oil in Oklahoma.

9. From August through December 1969, Mid-America sold about 12,000 gallons of heating oil, per month, in Oklahoma or to Oklahoma consumers.

10. There is evidence that Mid-America bought its natural gas from Cities Service Gas Company of Oklahoma City (Western District) until at least 1968. The source of the gas does not appear.

11. In October 1969, Mid-America sold a substantial quantity of asphalt to Apco Oil Corp. of Oklahoma City. The oil was to be shipped from Kansas to Missouri.

12. From 1964 until at least December 1969, Mid-America made continuous purchases of supplies from companies in Tulsa: The Refinery Supply Company, Grant Supply, Enjay Chemical Company, DuPont, Union Carbide, etc. Mid-America bought Alkylate from National Petroleum Sales of Tulsa. IBM Service Bureau Corporation in Tulsa kept certain records for Mid-America during at least 1967–69.

1964 and 1969. This tells us something on the subject of the transaction of business in the Northern District of Oklahoma since purchases, as well as sales, constitute the transaction of business. McCrory Corp. v. Cloth World, Inc., 378 F.Supp. 322 (S.D.N.Y.1974); Fashion Two Twenty, Inc. v. Steinberg, 339 F.Supp. 836, 842 (E.D.N.Y.1971); State of Illinois v. Harper & Row Publications, Inc., 308 F.Supp. 1207, 1210–1211 (N.D. Ill.1969); Crusader Marine Corp. v. Chrysler Corp., 281 F.Supp. 802, 804 (E.D.Mich.1968); United States v. Burlington Industries, Inc., 247 F.Supp. 185 (S.D.N.Y.1965).

▮ Thus, the trial court's determination that Mid-America was transacting business in the Northern District of Oklahoma was unquestionably correct in law as well as fact.[3]

## II.

The next step is consideration of whether the trial court was correct in holding that 15 U.S.C. § 22, the Clayton Act venue provision, applies to this case to the exclusion of the general venue statutes, §§ 1391 and 1392. Plaintiffs challenge the trial court's holding that the Clayton Act provision is exclusive. Plaintiffs maintain that §§ 1391 and 1392, *supra,* supplement the special antitrust provision. Plaintiffs further maintain that Mid-America was either transacting business or doing business in the Northern District of Oklahoma and that it was therefore residing in the Northern

District of Oklahoma within the meaning of § 1392. There exists no dispute as to some of the other defendants residing and doing business in the Western District of Oklahoma.

In the years before 1957 the court decisions were to the effect that § 22 (of the Clayton Act) did not exclusively govern venue in antitrust cases, but was supplemented by the general venue provisions of 28 U.S.C.[4] In the year 1957 the Supreme Court in Fourco Glass Co. v. Transmirra Products Corp., 353 U.S. 222, 77 S.Ct. 787, 1 L.Ed.2d 786 (1957) made an analogous ruling. It held that the special patent venue provisions of Title 28 were not supplemented by the general venue provisions of Title 28. The opinion pointed out that the general provisions here in question and the special patent venue provisions were revised by Congress at the same time. A consequence of this was that the courts tended to hold that the general venue provisions of 28 U.S.C. did not serve to supplement the special provision contained in 15 U.S.C. § 22.[5] In 1966, however, the Supreme Court gave an interpretation contrary to that which had been previously given in *Fourco Glass Company, supra.* This was in Pure Oil Co. v. Suarez, 384 U.S. 202, 86 S.Ct. 1394, 16 L.Ed.2d 474 (1966). It held in this later decision that the general venue provisions of 28 U.S.C. did indeed supplement the special venue provisions of the Jones Act (which was before it). The consequence of this ruling is that the *Fourco* case has since been limited to its issue,

---

3. On the basis of purchasing activity, there would even be some ground for a finding that Mid-America was actually transacting business in the Western District. Though there is no evidence as to the value, the records do indicate that Mid-America purchases all its natural gas requirements from Cities Service Gas Company in Oklahoma City.

4. Bertha Building Corp. v. National Theatres Corp., 103 F.Supp. 712 (E.D.N.Y.1952), *rev'd on other grounds,* 248 F.2d 833 (2d Cir. 1957); Lipp v. National Screen Service Corp., 95 F.Supp. 66 (E.D.Pa.1950); Auburn Capitol Theatre Corp. v. Schine Chain Theatres, 83 F.Supp. 872 (S.D.N.Y.1949). The *Auburn* case involved the application of section 1392 to an antitrust action.

5. Roberts Bros., Inc. v. Kurtz Bros., 231 F.Supp. 163 (D.N.J.1964); Crawford Transport Co. v. Chrysler Corp., 191 F.Supp. 223 (E.D. Ky.1961), *aff'd on other grounds,* 338 F.2d 934 (6th Cir. 1964), *cert. denied,* 380 U.S. 954, 85 S.Ct. 1088, 13 L.Ed.2d 971 (1965); R. J. Coulter Funeral Home v. National Burial Insurance Co., 192 F.Supp. 522 (E.D.Tenn.1960); Kaeppler v. James H. Matthews & Co., 180 F.Supp. 691 (E.D.Pa.1960); Goldlawr, Inc. v. Shubert, 169 F.Supp. 677 (E.D.Pa.1958), *aff'd on other grounds,* 276 F.2d 614 (3d Cir. 1960), *aff'd,* 369 U.S. 463, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962). *Kaeppler* and *Roberts Bros.* involved the application of § 1392 to an antitrust action.

the patent question, and the general view now is that the provisions of the general venue statute supplement all other special venue statutes. C. Wright, Law of Federal Courts § 42, at 155 (1970).[6] Three cases are particularly noteworthy in that they hold that the statute here in question, 15 U.S.C. § 22, is supplemented by 28 U.S.C. § 1392(a), whereby venue is proper in one district if one defendant resides in that district and another defendant resides in the same state but in another judicial district.[7]

Inasmuch as two of the other defendants in this case, Kerr-McGee Corporation and Mobil Oil Corporation, have transacted business in the Western District of Oklahoma, and since Mid-America has transacted business in the Northern District of Oklahoma, it follows that venue is proper in the Western District of Oklahoma, providing "transacts business" is equivalent to "residing" in § 1392.

Professor Wright (C. Wright, Law of Federal Courts § 42, at 149 (1970) ) says that the concept of venue "relates to the place where judicial authority may be exercised, and . . . is intended for the convenience of the litigants." As we have noted, § 1392(a), *supra,* allows suit in one district within a state where one of two codefendants resides in that district, notwithstanding that the subject

defendant resides in another district within a state. It would be anomalous to hold that a corporation which transacts business in a district for purposes of 15 U.S.C. § 22 does not reside in that district for purposes of 28 U.S.C. § 1392(a). Also, it would defeat the object of § 1392(a) which is to prevent two lawsuits in different districts within the same state where one suit would suffice. C. Wright, *supra,* at 154. *See also* Hawks v. Maryland & Pa. R. Co., 90 F.Supp. 284 (E.D.Pa.1950); 1 J. Moore, Moore's Federal Practice § 0.143[1], at 1452 (1974). It is also the purpose of 15 U.S.C. § 22 to liberalize rather than restrict venue in antitrust actions as far as corporations are concerned. · *See* United States v. National City Lines, Inc., 334 U.S. 573, 68 S.Ct. 1169, 92 L.Ed. 1584 (1948); United States v. Scophony Corp., 333 U.S. 795, 68 S.Ct. 855, 92 L.Ed. 1091 (1948); Eastman Kodak Co. v. Southern Photo Material Co., 273 U.S. 359 (1927). To hold that 15 U.S.C. § 22 is exclusive and that it impliedly prevents application of 28 U.S.C. § 1392 would frustrate the above mentioned desirable purposes.

Neither does 28 U.S.C. § 1391(c) contain an exclusive definition of the term "reside" as used in 28 U.S.C. § 1392(a). The former provision declares that any district in which a corporation "is incorporated or licensed to do business or is doing business . . . shall be regarded as the residence of such corpora-

---

**6.** *See* the following decisions holding that the antitrust venue provision is supplemented by the general venue statutes: Redmond v. Atlantic Coast Football League, 359 F.Supp. 666 (S.D.Ill.1973); Fox-Keller, Inc. v. Toyota Motor Sales, U.S.A., Inc., 338 F.Supp. 812 (E.D.Pa. 1972); Morton Buildings of Nebraska, Inc. v. Morton Buildings, Inc., 333 F.Supp. 187 (D.Neb.1971); California Clippers, Inc. v. United States Soccer Football Ass'n, 314 F.Supp. 1057 (N.D.Cal.1970); Albert Levine Assoc. v. Bertoni & Cotti, 314 F.Supp. 169 (S.D.N.Y. 1970); ABC Great States, Inc. v. Globe Ticket Co., 304 F.Supp. 1052 (N.D.Ill.1969); Adams Dairy Co. v. National Dairy Products Corp., 293 F.Supp. 1135 (W.D.Mo.1968); Philadelphia Housing Authority v. American Radiator & Standard Sanitary Corp., 291 F.Supp. 252 (E.D.Pa.1968); Edward J. Moriarty & Co. v. General Tire & Rubber Co., 289 F.Supp. 381 (S.D.Ohio 1967); Philadelphia v. Morton Salt

Co., 289 F.Supp. 723 (E.D.Pa.1968); Hawkins v. National Basketball Ass'n, 288 F.Supp. 614 (W.D.Pa.1968); New York v. Morton Salt Co., 266 F.Supp. 570 (E.D.Pa.1967), aff'd, 385 F.2d 122 (3d Cir. 1967), *cert. denied,* 390 U.S. 995, 88 S.Ct. 1195, 20 L.Ed.2d 94 (1968).

**7.** Philadelphia Housing Auth. v. American Radiator & Standard Sanitary Corp., 291 F.Supp. 252 (E.D.Pa.1968) (court found that the defendant, however, did not reside in any district in the state); Hawkins v. National Basketball Ass'n, 288 F.Supp. 614 (W.D.Pa.1968); New York v. Morton Salt Co., 266 F.Supp. 570 (E.D. Pa.1967), aff'd, 385 F.2d 122 (3d Cir. 1967), *cert. denied,* 390 U.S. 995, 88 S.Ct. 1195, 20 L.Ed.2d 94 (1968). *See also* Auburn Capitol Theatre Corp. v. Schine Chain Theatres, 83 F.Supp. 892 (S.D.N.Y.1949) (decided prior to *Fourco* ).

tion for venue purposes." All this in effect says is that corporations are deemed to reside in the districts in which they were incorporated, licensed to do business, or doing business. It does not say either expressly or impliedly that the meaning of the word "residing" is to be limited to the three activities set forth in § 1391(c).

We are aware that some courts hold that there is a difference—that fewer contacts are required in order to transact business than are required in order to do business.[8]

■ On the other hand, numerous decisions hold that the two terms are the same.[9] It is unnecessary, however, for this question to be determined within the context of the present problem. It is sufficient to hold, which we do, that § 1392, *supra,* supplements 15 U.S.C. § 22. We need not therefore agonize over whether transacting business and doing business are identical. *Cf.* Hawkins v. National Basketball Ass'n, 288 F.Supp. 614 (W.D.Pa.1968).

■ We also hold that since Mid-America transacted business in the Northern District of Oklahoma and since codefendants transacted business in the Western District of Oklahoma, venue was proper in the Western District of Oklahoma as against Mid-America under

§ 1392(a). We also reject Mid-America's contention that its contacts were insufficient to support a holding that it transacted business even in the Northern District.

The outline of the facts which is set forth above attests to the substantial amount of business that was transacted in the Northern District of Oklahoma.

### III.

■ The remaining matter is whether the fact that Mid-America was not shown to be doing business in either the Northern District or the Western District as of October 1971 served to prevent a ruling that venue is proper in the Western District of Oklahoma. In other words, is it the time of the filing of the complaint or the time the cause of action arose that counts? The vast weight of authority supports the rule that the crucial time is when the cause of action arose. The cases include decisions of the Fourth, Eighth and Ninth Circuits, together with an indication from the Tenth Circuit that the time when the action arises is determinative.[10]

The Tenth Circuit decision is Houston Fearless Corp. v. Teter, *supra.* Houston Fearless did not have an office in Colorado; it simply maintained a sales representative who assisted in obtaining sales leads and contacts, in negotiating pur-

8. *See* Friends of Animals, Inc. v. American Veterinary Assoc., 310 F.Supp. 620 (S.D.N.Y. 1970); Philadelphia Housing Authority v. American Radiator & Standard Sanitary Corp., 291 F.Supp. 252 (E.D.Pa.1968); Ohio-Midland Light & Power Co. v. Ohio Burns Co., 221 F.Supp. 405 (S.D.Ohio 1962); Raul International Corp. v. Nu-Era Gear Corp., 28 F.R.D. 368 (S.D.N.Y.1961); Note, 56 Colum.L.Rev. 394, 416 (1956).

9. *See, e. g.,* Fashion Two Twenty, Inc. v. Steinberg, 339 F.Supp. 836 (E.D.N.Y.1971); City of Philadelphia v. Morton Salt Co., 289 F.Supp. 723 (E.D.Pa.1968).

10. *See* Eastland Const. Co. v. Keasbey and Mattison Co., 358 F.2d 777 (9th Cir. 1966); Snyder v. Eastern Auto Distributors, Inc., 357 F.2d 552 (4th Cir.), *cert. denied,* 384 U.S. 987, 86 S.Ct. 1889, 16 L.Ed.2d 1004 (1966); Farmers Elevator Mutual Ins. Co. v. Carl J. Austad & Sons, Inc., 343 F.2d 7 (8th Cir. 1965); Hous-

ton Fearless Corp. v. Teter, 318 F.2d 822 (10th Cir. 1963). *See also* Great American Ins. Co. v. Louis Lesser Enterprises, Inc., 353 F.2d 997 (8th Cir. 1965); Fulton Co. v. Beaird-Poulan, Inc., 54 F.R.D. 604 (N.D.Miss.1972); California Clippers, Inc. v. United States Soccer Football Ass'n, 314 F.Supp. 1057 (N.D.Cal.1970); ABC Great States, Inc. v. Globe Ticket Co., 304 F.Supp. 1052 (N.D.Ill.1969); Adams Dairy Co. v. National Dairy Products Corp., 293 F.Supp. 1135 (W.D.Mo.1968); Ward v. Island Creek Fuel & Trans. Co., 261 F.Supp. 810 (N.D.W.Va. 1966); Sharp v. Commercial Solvents Corp., 232 F.Supp. 323 (N.D.Tex.1964); Nelson v. Victory Electric Works, 210 F.Supp. 954 (D.Md.1962); L'Heureux v. Central American Airways Flying Service Co., 209 F.Supp. 713 (D.Md.1962); R. J. Coulter Funeral Home, Inc. v. National Burial Insurance Co., 192 F.Supp. 522 (E.D.Tenn.1960); Ross-Bart Port Theater v. Eagle Lion Films, Inc., 140 F.Supp. 401 (E.D.Va.1954).

chase orders and contracts and provided a technical liaison before and after the goods were delivered and assisted in making collections. In effect, our court recognized the doctrine that the time of the contacts within the district is controlling because the relationship with the sales representative was terminated prior to the filing of the action. Although the specific issue of time was not taken up, it is possible to infer that this court would rule that it is satisfactory if business was done or transacted, even though subsequently terminated; that the time of the doing of business governs rather than the time of the filing of the suit.

The *Eastland Construction Company* decision of the Ninth Circuit is a fully considered and reasoned opinion. In that case an indictment charged several defendants with asbestos-cement pipe monopoly on June 1, 1962. On that very day one of the defendants sold his business, including a plant which was located in the Northern District of California. Thereafter, it did no business in California, but two and one-half years later the plaintiff filed a treble damage suit in the Northern District of California alleging the purchase of pipe from 1952 to the date of filing. While the district court granted the motion of defendant to dismiss, the Circuit Court reversed this judgment and said that the time of doing business was controlling:

> * * * we conclude that under section 12 of the Clayton Act, venue is properly laid against a corporate defendant in any district in which the defendant was transacting business when plaintiff's cause of action accrued. We do so primarily because of the construction which the Supreme Court placed on the legislative history of section 12 in Eastman Kodak Co. v. Southern Photo Co., 273 U.S. 359, 47 S.Ct. 400, 71 L.Ed. 684 (1927); United States v. Scophony Corp., 333 U.S. 795, 68 S.Ct. 855, 92 L.Ed. 1091 (1948); and United States v. National City Lines,

Inc., 334 U.S. 573, 68 S.Ct. 1169, 92 L.Ed. 1584 (1948).

358 F.2d at 780.

The court was persuaded by decisions of the Supreme Court construing § 12, 15 U.S.C. § 22, all of which stated that the purpose of Congress in providing for venue in antitrust cases was to permit an injured person to sue for redress in his home district rather than to be forced to sue in a distant district in which a foreign corporation resides or is found. In Eastland Const. Co. v. Keasbey and Mattison Co., *supra,* it was held by the Ninth Circuit that inasmuch as defendant was transacting business in the district, § 12 was satisfied. Our view is similar. Section 12 was not intended to set outer, restrictive limits.

Nor do we consider it necessary that the claim arise from the very business that was being transacted in order to have proper venue. The cases cited above did not impose this requirement. There are a number of district court cases and a decision from the Third Circuit which adopt the contrary rule that there must have been transacting of business as of the date of the filing of the suit.[11] We, however, consider the crucial time for purposes of venue to be the period when the action arose rather than the date of filing. This is better reasoned and is more in harmony with the objects and spirits of the antitrust laws.

In sum, then, we uphold the trial court's finding that business was being transacted by the defendant-appellant in the Northern District of Oklahoma; that the cause arose at the time such business was being transacted; and that pursuant to § 22, venue in the Western District of Oklahoma was valid and proper.

Accordingly, the judgment of the district court is affirmed in part, reversed in part and remanded for further proceedings consistent with the views expressed herein.

11. *See, e. g.,* Sunbury Wire Rope Mfg. Co. v. United States Steel Corp., 230 F.2d 511 (3d Cir. 1956); Redmond v. Atlantic Coast Football League, 359 F.Supp. 666 (S.D.Ind.1973).