**CRUSADER MARINE CORPORATION,
Plaintiff,**

v.

**CHRYSLER CORPORATION and Johnson and Towers, Inc., Defendants.**

Civ. A. No. 27892.

United States District Court
E. D. Michigan, S. D.
March 22, 1968.

John P. O'Neill, Blinstrub, O'Neill & Shannon, Detroit, Mich., John T. Miller, Washington, D. C., for plaintiff.

Walter B. Maher, Keith A. Jenkins, Detroit, Mich., for defendant, Chrysler Corp.

Sol. J. Schwartz, Schwartz & Cooper, Detroit, Mich., for defendant, Johnson and Towers, Inc.

## OPINION AND ORDER DENYING MOTION TO DISMISS

LEVIN, District Judge.

The question presented on this motion to dismiss filed by defendant Johnson and Towers, Inc. is whether the Eastern District of Michigan is a district in which it may be sued under the provisions of the Clayton Act. The pertinent section of the Act provides that:

"Any suit, action, or proceeding under the antitrust laws against a corpora-

tion may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business." 15 U.S.C. § 22.

I have concluded that Johnson and Towers was transacting business within this district in the years 1962 to 1965 inclusive and hence that it was subject to suit here at the commencement of this action on January 13, 1966.

The relevant facts as established by answers to interrogatories filed by the president of defendant Johnson and Towers are as follows: Johnson and Towers is a Pennsylvania corporation engaged in selling marine engines and other products for boats, principally to boat manufacturers. During the four-year period at issue, approximately ninety-five to ninety-eight per cent of the engines which it sold were manufactured in Michigan by the defendant Chrysler Corporation, the Detroit Diesel Division of General Motors Corporation, and other Michigan suppliers.

Johnson and Towers served as a distributor for General Motors Corporation under contracts executed annually. Purchases from General Motors Corporation for each of the years in question were between $1,000,000 and $1,250,000, and personnel of Johnson and Towers visited General Motors offices in Michigan approximately twenty times during this period, primarily to attend training school and sales meetings.

Johnson and Towers' gross purchases from defendant Chrysler Corporation during the four years next preceding the filing of the complaint ranged from $600,000 to $850,000 a year. Johnson and Towers served as a distributor for Chrysler Corporation under a non-exclusive agreement covering portions of Pennsylvania, New Jersey, Maryland and Delaware. The latest agreement, executed in the Camden, New Jersey store of Johnson and Towers on November 11, 1964, states that it "will be interpreted and construed under and according to the Laws of the State of Michigan". Shipment by Chrysler was by common carrier with freight paid by Johnson and Towers. However, on six occasions, "probably in 1963", Johnson and Towers sent its own trucks into Michigan to pick up products. Officers and personnel of Johnson and Towers visited Chrysler Corporation facilities in Michigan approximately four times between 1962 and 1965, spoke by telephone to the General Manager of Chrysler's Marine and Industrial Division an average of twelve times a year, and exchanged approximately twenty-four letters a year other than purchase orders with Chrysler Corporation. About five times a year Johnson and Towers shipped defective material or overstocked material to Michigan offices of Chrysler Corporation for replacement or credit.

Defendant Johnson and Towers argues that because it is not licensed to do business in Michigan, has no property or agents in Michigan and solicits no business in Michigan, it is not an "inhabitant" of this state nor is it "found" here or "transacting business" here.

The Sherman Act provided for suit only in the district where the defendant "resides or is found" 26 Stat. 210. It is clear that the intent of Congress in 1914, when it included the words "or transacts business" in the venue provision of the Clayton Act, was to enlarge the venue and broaden the choice of forum available in antitrust actions. The additional words in the Clayton Act were intended to remedy the difficulties in enforcement of the antitrust policy apparent under the earlier act. Eastman Kodak Co. v. Southern Photo Material Co., 273 U.S. 359, 47 S.Ct. 400, 71 L.Ed. 684 (1927). "The practical, everyday business or commercial concept of doing or carrying on business 'of any substantial character' became the test of venue," United States v. Scophony Corp. of America, 333 U.S. 795, 807, 68 S.Ct. 855, 861, 92 L.Ed. 1091 (1948), and the words "transacts business" were given a broad-

er meaning than terms such as "doing business", "found", and "carrying on business". Commonwealth Edison Co. v. Federal Pacific Electric Co., 208 F. Supp. 936 (N.D.Ill.1962).

Johnson and Towers cites several cases to support its position that its activities in this district were not sufficient to constitute the "transaction of business" within the meaning of the Clayton Act. In *Commonwealth Edison,* supra, the defendant had made six isolated sales in Illinois, with a total value of $3,080.90, which represented an insignificant fraction of the company's total sales. The court granted the motion to dismiss, saying:

> "While the phrase 'transacts business' in the venue provision of the statute (15 U.S.C.A. § 22) has been held to have the broadest connotation of all the antitrust statutes for venue purposes, still it embraces elements of substantiality of business done, with continuity in character, regularity, contemporaneousness with time of service, and not looking toward cessation of business." 208 F.Supp. at 940.

Likewise in *Stern Fish Co. v. Century Seafoods, Inc.,* 254 F.Supp. 151 (E.D. Pa.1966), the court held that "more than a few isolated and peripheral contacts with the particular judicial district [were required]", and granted a motion to dismiss as to a defendant whose officers and employees made only infrequent visits to Pennsylvania to discuss an advertising campaign for South African rock lobster tails, but which had no substantial business dealings within the state.

The answers filed by Johnson and Towers' president to plaintiff's interrogatories establish that his company's business transactions with its Michigan suppliers were neither isolated nor sporadic, but were continuous activities which formed a substantial part of its business. The only question then is whether purchases within a district and other activities incident to these purchases can be a sufficient basis for finding that a corporation is transacting business there within the meaning of the Clayton Act. To hold that purchasing is to be excluded from the definition of "transacting business" would not be realistic, for it is obvious that in any line of commerce purchasing may very well be as important to business as the selling of commodities and under certain circumstances could constitute conduct prohibited by the antitrust laws.

In United States v. Burlington Industries, Inc., 247 F.Supp. 185 (S.D.N.Y. 1965) one factor which supported a finding that venue was proper in that district was that the defendant purchased two million dollars' worth of goods there. The court did not indicate whether that factor alone would have been sufficient. For a discussion of the question whether purchasing alone constitutes transacting business see the comprehensive opinion of Justice Traynor in Henry R. Jahn & Son, Inc. v. Superior Ct. etc., 49 Cal.2d 855, 323 P.2d 437 (1958). Jahn had made regular purchases of goods as exclusive export agent of a California company through orders placed by mail. Shipment by the manufacturer was f. o. b. California. This placed title to the goods in the New York corporation while they were still in California, and a general forwarding company in California then shipped the goods at its direction. "It reaped the benefits of our laws that protected its goods while they were here, and it had access to our courts to enforce any rights in regard to these transactions." 323 P.2d at 441.

■■ The argument by Johnson and Towers that venue in a suit brought under the antitrust laws may be based upon purchases within a state only when the suit concerns the purchase transaction itself is not well founded. It is true that in *Jahn* and many of the other cases relied upon by the plaintiff, purchasing activities would not have supported general jurisdiction, but this was either because the statutes being construed conferred only limited jurisdiction or because due process would have been

offended. Here there is no due process issue, see United States v. Scophony Corp. of America, 333 U.S. at 804, 68 S.Ct. 855, 92 L.Ed. 1091, and the language of the statute clearly makes a district a proper forum for *any* antitrust suit against a corporation transacting business there. 15 U.S.C. § 22.

The motion to dismiss is denied.