The **PHILADELPHIA HOUSING AU-THORITY** on behalf of itself and all others similarly situated

v.

**AMERICAN RADIATOR & STANDARD SANITARY CORPORATION et al.**

**LINDY BROS. BUILDERS, INC. OF PHILADELPHIA et al.**

v.

**AMERICAN RADIATOR & STANDARD SANITARY CORPORATION et al.**

**Civ. A. Nos. 41773, 41774.**

United States District Court E. D. Pennsylvania.

Aug. 9, 1968.

Aaron M. Fine and Dolores Korman, Philadelphia, Pa., for Philadelphia Housing Authority and other named plaintiffs.

Philip M. Hammett and Lawrence T. Hoyle, Jr., Philadelphia, Pa., for Georgia Sanitary Pottery, Inc., and Kilgore Ceramics Corp.

## OPINION AND ORDER

JOHN W. LORD, Jr., District Judge.

The above-captioned antitrust suits were brought as class actions on behalf of (1) state and municipal governments, authorities and subdivisions which build or renovate homes and apartment dwellings, and (2) builders of home 'and apartment dwellings, alleging violations of the antitrust laws by defendants with respect to the manufacture and sale of plumbing fixtures. Included among the defendants were two so-called "Short Line Manufacturers" who manufacture the lowest price line of staple vitreous china plumbing fixtures, Kilgore Ceramics Corporation ("Kilgore") and Georgia Sanitary Pottery, Inc. ("Georgia Sanitary"). These two defendants have moved to dismiss the actions for lack of venue.

I. *Venue under Section 12 of the Clayton Act*

▮▮▮ Venue in private antitrust actions against corporate defendants is governed by the special venue provision of Section 12 of the Clayton Act (15 U.S.C.A. § 22), as supplemented by 28 U.S.C.A. §§ 1391(c) and 1392(a) of the general venue statute.[1] This has been established by both Judges Kraft and Joseph S. Lord, III of this Court in the cases of School District of Philadelphia v. Harper & Row Publishers, Inc., 267 F.Supp. 1006 (E.D.Pa. 1967) and State of New York v. Morton Salt Co., 266 F. Supp. 570 (E.D.Pa. 1967) respectively. Section 12 of the Clayton Act provides in part:

*District in which to sue corporation*
Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business * * *.

Since plaintiffs' antitrust actions have been brought in this Eastern District of Pennsylvania under the antitrust laws, venue is proper here as to both Kilgore and Georgia Sanitary only if they are (a) inhabitants of this District, (b) found in this District, or (c) transacting business in this District.

(a) *Inhabitant.* A corporation is an inhabitant of the State in which it is incorporated. Aro Manufacturing Co. v. Automobile Body Research Corp., 352 F.2d 400 (1st Cir. 1965), cert. den. 383 U.S. 947, 86 S.Ct. 1199, 16 L.Ed.2d 210 (1966). Neither Kilgore nor Georgia Sanitary are incorporated in the Commonwealth of Pennsylvania. Kilgore is incorporated under the laws of the State of Texas; Georgia Sanitary under the laws of Indiana.

(b) *Found.* The word "found" within this provision of the Clayton Act connotes presence and continuous local activities within the district. So held Judge Davis of this Court in Stern Fish Co. v. Century Seafoods, Inc., 254 F. Supp. 151 (E.D.Pa. 1966). This is to say that the corporation must be present in the District by "its officers and agents carrying on the business of the corporation." Aro Manufacturing Co. v. Automobile Body Research Corp., supra, 352 F.2d at 404. Neither defendant has any officers, employees or agents in this

---

1. See II. of this opinion "Venue under Sections 1391(c) and 1392(a) of the General Venue Statute."

District who continually carry on local activities here.

(c) *Transact Business.* In 1948, the Supreme Court held that a corporation is transacting business in a District if in fact in practical and business sense it carries on business "of any substantial character." United States v. Scophony Corporation of America, 333 U.S. 795, 807, 68 S.Ct. 855, 92 L.Ed. 1091 (1948). Since this decision there has been of necessity a case by case examination of the facts at hand to determine whether from a practical business standpoint a corporation is carrying on business of any substantial character in the District.

■ Where the only activity carried on within a certain District is sales into the District, it is helpful to examine and be guided by the late Judge Grim's opinion in Sunbury Wire Rope Manufacturing Co. v. United States Steel Corp., 129 F.Supp. 425 (E.D.Pa.1955). He said there, whether or not a corporation is transacting business in a District should not depend on the percentage of its overall sales made in the District, but rather "whether or not the sales would appear to be substantial from the average businessman's point of view." Id. at 427. There Detroit Steel Corporation's overall sales amounted to almost $100 million a year as compared to its almost $600,000 worth of steel delivered into the Eastern District of Pennsylvania in less than two years. While this only constituted 0.3 per cent a year of Detroit Steel's total sales, Judge Grim held that almost $600,000 worth of business in less than two years, viewed without reference to overall sales volume, would appear to be quite substantial to the average businessman.

In the case at bar, Georgia Sanitary's vice-president in charge of manufacturing attended a convention of the American Ceramics Society, Inc. in Philadelphia; the corporation placed advertisements in three trade publications distributed in this District; and made the following deliveries of goods sold into this District:

10/1/63 – 9/30/64 . . . . $3,295.00
10/1/64 – 9/30/65 . . . . 3,012.75
10/1/65 – 9/30/66 . . . . 925.00
10/1/66 – 5/15/67 . . . . 1,890.00

It seems that if Georgia Sanitary carries on any business of a substantial character in this District, it does not do so by virtue of such isolated occurrences as its vice-president's journey to Philadelphia, nor by its advertising in three trade journals that happen to be distributed in this District. Thus left with only the shipments into this District to consider and being guided by the Supreme Court test and Judge Grim's guidelines, it is my conclusion that Georgia Sanitary was not transacting business in the Eastern District of Pennsylvania when the present action was filed and service made on it.

■ Kilgore's activities here consisted of the placing of advertisements in two trade publications in a total of four issues in 1964. Two Kilgore employees attended the same convention as the Georgia Sanitary executive in 1965. Kilgore made no sales in this district; rather they made purchases of materials in each of the years 1964 through 1967 from two Philadelphia corporations consisting of the following:

1964 . . . . . . . 4 Purchases . . . . . . $258.62
1965 . . . . . . . 7 Purchases . . . . . . 618.09
1966 . . . . . . . 5 Purchases . . . . . . 220.76
1967
(Jan.–Apr.) 2 Purchases . . . . . . 64.36

In the recent case of Crusader Marine Corp. v. Chrysler Corp., 281 F.Supp. 802 (E.D.Mich.1968), the court concluded that "it is obvious that in any line of commerce purchasing may very well be as important to business as the selling of commodities." Id. at 804. The court went on to cite a 1965 Southern District of New York case wherein one factor which supported a finding that venue

was proper in that District was that the defendant purchased two million dollars' worth of goods there. United States v. Burlington Industries, Inc., 247 F.Supp. 185 (S.D.N.Y.1965).

Using the "business of a substantial character" test and the applications made of it by Judge Joseph S. Lord, III in Morton Salt, supra, 266 F.Supp. at 575, and Judge Davis in Stern Fish, supra, 254 F.Supp. at 153, respectively, that transacting business requires "more than a few isolated and peripheral contacts with the particular judicial district", it is my opinion that the purchases made by Kilgore in this District over a three-and-a-half year period standing alone, or viewed in conjunction with the advertising and convention visit, do not constitute transacting business in the Eastern District of Pennsylvania.

II. *Venue under Sections 1391(c) and 1392(a) of the General Venue Statute.*

Section 1391(c) of the Judicial Code [28 U.S.C.A. § 1391(c)] provides:

A corporation may be sued in any judicial district in which it is incorporated or licensed to do business or is doing business, and such judicial district shall be regarded as the residence of such corporation for venue purposes.

Section 1392(a) states:

Any civil action, not of a local nature, against defendants residing in different districts in the same State, may be brought in any of such districts.

As stated above,[2] it has been established by two judges in this District Court that these "general venue" provisions serve to supplement the "special venue" provision of the Clayton Act.

The concept of "doing business" is narrower than "transacting business", i.e., it takes more activity to constitute "doing business" than it does to meet the "transacting business" test.

Indeed, the prevailing view in this Eastern District is that "[i]n determining how much activity within a district a foreign corporation must engage before such activity will constitute 'doing business' for purposes of federal venue, the basic consideration is whether a license would be required of the foreign corporation as a condition precedent to carrying on that activity." Remington Rand, Inc. v. Knapp-Monarch Co., 139 F.Supp. 613, 617 (E.D.Pa.1956). There Judge Wright rejected the *International Shoe* "minimum contacts" interpretation of doing business as applied in "service of process" questions. See International Shoe Co. v. State of Washington, 326 U. S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Thus more activity is needed to subject a defendant corporation to venue in a jurisdiction than would be needed to subject it to service of process there.

Plaintiffs maintain that the Third Circuit Court of Appeals has recently established that the *International Shoe* "minimum contacts test" should be applied to "doing business" in all federal venue questions. They rely on Fraley v. Chesapeake & Ohio Ry. Co., 397 F.2d 1 (3rd Cir. June 14, 1968).

The *Fraley* case construed the special venue provision of the Federal Employers' Liability Act which provides:

[A]n action may be brought in a district court of the United States, in the district of the residence of the defendant, or in which the cause of action arose, or in which the defendant shall be *doing business* at the time of commencing such action. 45 U.S.C.A. § 56. (Emphasis added).

Doing business under the F.E.L.A. special venue statute was held by the Third Circuit to mean that a defendant corporation must have certain minimum contacts with a jurisdiction so that the maintenance of the suit does not offend traditional motions of fair play and substantial justice.

2. See text accompanying footnote 1, supra.

It must be stressed that the construction of "doing business" in the *Fraley* case was only for F.E.L.A. actions. It has no more application to antitrust actions than the special venue statute of the Clayton Act has to F.E.L.A. cases.

Furthermore, the "doing business" clause in question in this present case is embodied in the general venue statute. As such, a construction of the term as used in a special F.E.L.A. venue statute has no applicability to it.

The test for doing business in venue questions in this district was laid down in Judge Wright's opinion in *Remington Rand,* supra. If the Court of Appeals sought to set forth a different test for "doing business" in *all* venue matters, it no doubt would have mentioned this case. It did not. This leads this Court to believe that the Third Circuit was limiting its opinion only to F.E.L.A. cases.

■■■■ As stated above, since it has been concluded that neither defendant is transacting business in the Eastern District of Pennsylvania, it follows a fortiori that neither can be held to be doing business here. However, under section 1392(a), if Kilgore or Georgia Sanitary can be found to be doing business in the Western or Middle Districts of the Commonwealth, it will be held to be, in effect, doing business here also.

■■■■ Kilgore's activity in the Middle District of Pennsylvania, aside from advertising in trade journals that are distributed there, consisted of the following purchases of materials:

| | |
|---|---|
| 1964 | $24,199.53 |
| 1965 | 23,520.28 |
| 1966 | 21,517.86 |
| Jan.–Apr. 1967 | 5,846.13 |

It has not been maintained by plaintiffs that such purchases would be of such a nature as to require Kilgore to secure a license in this or any other State as a condition precedent to making them. Nor, am I of the opinion that this or any other State would subject a foreign corporation to the inconvenience and expense of securing a license to purchase goods and materials from one of its citizens. In any event, it is the conclusion of this Court that Kilgore would not have had to be licensed in the Commonwealth of Pennsylvania to purchase the quantity of materials it did in Pennsylvania over the three-and-one-half year period at issue here.

Similarly, and for the same reasons, Kilgore cannot be held to have been "doing business" in the Western District of Pennsylvania.[3]

■■■■ Georgia Sanitary, while carrying on about the same amount of business activity in the way of sales into the Middle District of Pennsylvania as it did in the Eastern District, has made considerable shipments into the Western District as follows:

| | |
|---|---|
| 10/1/63 – 9/30/64 | $155,344.85 |
| 10/1/64 – 9/30/65 | 92,296.46 |
| 10/1/65 – 9/30/66 | 81,611.30 |
| 10/1/66 – 5/15/67 | 34,008.10 |

These totals, while perhaps indicating "transaction of business" in the Western District of Pennsylvania,[4] nevertheless do not hold Georgia Sanitary to be doing business thereunder the *Remington Rand* doctrine. Again, the test is whether a license would be required of the foreign corporation to carry on the activity in the State. Section 1001 of the Pennsylvania Business Corporation Law (15 P.S. § 2001)[5] provides that a

---

3. Kilgore's purchases in the Western District were only slightly higher than in Philadelphia.

4. Transacting of business in one judicial district of a State, unlike doing business, does not render a corporation to be trans-

acting business in all the districts of the State.

5. 15 P.S. § 2001 states in part:
 B. Without excluding other activities which may not constitute doing business in this Commonwealth, a foreign busi-

foreign corporation "effecting sales through independent contractors" need not be licensed to carry on such activity in the Commonwealth.

All of the sales of Georgia Sanitary products in the Western District of Pennsylvania were made by Fred H. Allen, an independent Manufacturer's Representative who is not an employee of Georgia Sanitary and who acts as an independent Manufacturer's Representative for a number of companies other than Georgia Sanitary.

Thus, it cannot be held that Georgia Sanitary is doing business in any federal judicial district of the Commonwealth of Pennsylvania.

III. *Venue under the November 2, 1966 Amendment to Section 1391(b) of the Judicial Code*

In 1966, the Judicial Code was amended to read:

> (b) A civil action wherein jurisdiction is not founded solely on diversity of citizenship may be brought only in the judicial district where all defendants reside, *or in which the claim arose*, except as otherwise provided by law. 28 U.S.C.A. § 1391(b), (amendment italicized).

 It is certain to this Court that section 1391(b) as amended applies to private antitrust actions. This section is as much a part of the general venue provisions of the Judicial Code as are sections 1391(c) and 1392(a) discussed above. And as stated therein, the general venue provisions serve to supplement the special venue provision of the Clayton Act. It is not so, as defendants have contended, that the clause "except as otherwise provided by law" limits 1391(b) to actions for which Congress has not seen fit to adopt special venue statutes. To the contrary, 1391(b) may very well permit venue, as do sections 1391(c) and 1392(a), in jurisdictions wherein venue could not be had under the "transacting business" test of the special antitrust venue statute. "As otherwise provided by law" simply means that even if venue would not be proper under 1391(b), it will still be found to exist if proper under a special venue statute.

 On the other hand, the amendment is in keeping with the trend of enlarging venue as set forth by the Supreme Court in Pure Oil Co. v. Suarez, 384 U.S. 202, 86 S.Ct. 1394, 16 L.Ed. 2d 474 (1966) and Judges Kraft and Joseph S. Lord, III of this Court in School District of Philadelphia v. Harper & Row Publishers, Inc. and State of New York v. Morton Salt Co., supra. Thus, whereas a foreign corporation may not be transacting business in the district in question in a State, if under 1391(c) and 1392(a) it is *doing business* in another district of that State, venue is proper in any other district. Similarly, if the claim arose in the Eastern District and, again, no business was being transacted there by the defendant corporation, venue would still properly exist in this District under 1391(b) as amended.

Assuming, therefore, that venue lies in private antitrust actions where the claim arose, the next question then becomes "where does the claim arise".

Plaintiffs would have us hold that a claim arises in private antitrust actions in the district in which the injury occurs, e.g. here, where they were injured by paying prices allegedly illegally increased as a result of alleged conspiracy. Plaintiffs cite for this proposition the case of Rosen v. Savant Instruments, Inc., 264 F.Supp. 232 (E.D.N.Y.1967), a wrongful death action in which the court

---

ness corporation shall not be considered to be doing business in this Commonwealth for the purposes of this section and of sections 1012 and 1014 of this act, but not necessarily for the purposes of taxation or of section 1011 of this act concerning service of proc-

ess, by reason of carrying on in this Commonwealth any one or more of the following activities:

 * * * * *

(5) Effecting sales through independent contractors; * * *.

held that venue would be proper at the situs of the wrongful death.

While it may be well to find that a *tort* claim arises in the jurisdiction where the injury occurs, antitrust actions are not susceptible to such simplistic rationale.

It is almost forgotten in this context, that the Rosen wrongful death action was based on diversity of citizenship and so venue was construed under 1391(a) and not 1391(b) as the case here. Section 1391(a) of the Judicial Code is applicable in diversity cases, while 1391(b) was adopted for "federal question" suits. It is well established under Erie R. R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) that federal courts are required to apply state law to resolve the substantive rights of parties in diversity actions. It has been recently determined by the Sixth Circuit in Still v. Rossville Crushed Stone Co., 370 F.2d 324 (6th Cir. 1966), cert. denied 387 U.S. 918, 87 S.Ct. 2030, 18 L.Ed.2d 970 (1967), that venue was a substantive right. What this determination does is to make venue dependent upon state law. Thus "where the claim arose" test must turn on individual state law. In cases founded on diversity of citizenship, venue under the section 1391(a) "where the claim arose" test will be ultimately governed by state law.

However, 1391(b) applies in non-diversity cases, e.g. federal question cases. It is beyond dispute that federal question cases turn on federal substantive law. Venue being substantive, a uniform test for "where the claim arose" must be fashioned to co-exist alongside the various state tests of "where the claim arose" in diversity cases such as *Rosen*.

It may be well to say in simple tort diversity cases that a state rule that holds that where the claim arises is where the injury occurs is as just as a state rule that holds the situs of the wrongful act controls. However, in a federal question case it is necessary to insure uniformity throughout the nation. In federal question cases, the determination of where venue lies cannot be left up to the states.

In general, venue affords some protection to a defendant from being forced to litigate an action in a district remote from his residence. 1 Moore's Federal Practice ¶ 0.140, 1317 (1964). Venue relates to the *convenience* of litigants. If courts were to adopt the mechanical test of "place of injury" determining "where the claim arose", the sale of one small item to a plaintiff at a price illegally inflated by an alleged conspiracy in some remote district would create venue there. This, it is submitted, would undermine the principles underlying the concept of federal venue and negate any compatible reading of § 1391(b) with § 12 of the Clayton Act. True, the sale of one item causing personal bodily injury to a purchaser might give rise to venue in some remote district if the court there held, applying state law, that under 1391(a) the claim arose where the injury occurred. However, by adopting a venue provision that necessarily turns on state law, Congress has in effect abdicated any strong federal interest in venue in simple diversity cases.

Not so in federal question cases. Here Congress was still interested in seeing to it that plaintiffs do not have virtually unlimited power to bring actions in any forum—to "give plaintiffs free reign to haul defendants hither and yon at their caprice". United States v. National City Lines, 334 U.S. 573, 68 S.Ct. 1169, 92 L.Ed. 1584 (1947).

It is submitted that "where the claim arose" should be dependent upon where the contacts weigh most heavily. A "weight of the contacts" test would enable venue to exist in a district where the injury occurred, if significant sales causing substantial injury were made to plaintiffs there by defendants. If some other overt act pursuant to the conspiratorial meetings took place in a district and it was a significant and sub-

stantial element of the offense, then venue would lie in that district. Conversely, if one insignificant sale was made in a district, as set forth above in the hypothetical, venue would not lie there. Similarly, if a meaningless and insignificant meeting of the conspirators took place in a certain district, venue would not exist there either.

For our purposes, here, since no sales to plaintiffs were made by either defendant here, the "weight of contacts" test would not apply at all in this district.

It has been argued, in the alternative, by plaintiffs that even if it were held by this Court that the claim here did not arise where the injuries (sales) occurred; rather it arose where the conspiratorial acts took place, there would still be venue in this district. In support of this contention, plaintiffs argue that the Supreme Court has held that the sale of an item pursuant to a ·conspiracy to fix prices is an element of the offense and is accordingly as much of an overt act pursuant to the conspiracy as are the actual meetings or communications among the defendants. United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 60 S.Ct. 811, 84 L.Ed. 1129 (1940); United States v. Trenton Potteries Co., 273 U.S. 392, 47 S.Ct. 377, 71 L.Ed. 700 (1927). Thus although there were not alleged to have been any conspiratorial meetings in this district,[6] sales made here at prices illegally inflated by the alleged conspiracy would, under plaintiffs' logic, be an overt act pursuant to the conspiracy constituting as much an element of the offense as the meetings themselves.

Assuming the correctness of this reasoning, an essential element necessary to establish venue here is still missing. In order for plaintiffs to assert that their claims against Kilgore arose in this District, they would have to establish that they purchased products in this District from Kilgore at an illegally inflated price. Kilgore and Georgia Sanitary made no sales to plaintiffs in this District at all. Therefore, plaintiffs' only recourse is to assert that their purchases in this District from the alleged co-conspirators of Kilgore and Georgia Sanitary constituted conspiratorial acts giving rise to the claim here. In short, plaintiffs ultimately assert the co-conspirator theory of venue.

### The Co-conspirator Theory of Venue

The so-called co-conspirator theory of venue rests on the hypothesis that the co-conspirator in the district is the agent of the foreign defendant corporation. The theory first came to light through *dictum* in the Ninth Circuit Court. of Appeals case of Giusti v. Pyrotechnic Industries, Inc., 156 F.2d 351 (9th Cir. 1946), cert. denied, Triumph Explosives v. Giusti, 329 U.S. 787, 67 S. Ct. 355, 91 L.Ed. 675 (1946), only to be sharply attacked by the Supreme Court in Bankers Life & Cas. Co. v. Holland, 346 U.S. 379, 74 S.Ct. 145, 98 L.Ed. 106 (1953). Mr. Justice Clark observed:

While a criminal action under the antitrust laws lies in any district where the conspiracy was formed or in part carried on or where an overt act was committed in furtherance thereof, Congress by 15 U.S.C. § 15, 15 U.S.C.A. § 15, placed definite limits on venue in treble damage actions. Certainly Congress realized in so doing that many such cases would not lie in one district as to all defendants unless venue was waived. It must, therefore, have contemplated that proceedings might be severed and transferred or filed in separate districts originally. Thus petitioner's theory has all the earmarks of a frivolous albeit ingenious attempt to expand the statute.

In a dissenting opinion Justices Frankfurter, Jackson and Minton similarly criticized the theory stating that the contention that a co-conspirator as such is an agent for the purposes of venue is frivolous.

---

6. The conspiratorial meetings were alleged to have taken place in New York City, Chicago and Bal Harbour, Florida.

■ As stated above in the discussion of "where the claim arose", while there is no doubt that the Congressional liberalization of venue in private antitrust actions was designed to relieve injured plaintiffs from the often insurmountable hurdle of being left to distant forums for redress of wrongs done in their home jurisdictions, it was never intended to, as previously stated, give plaintiffs freedom to subject defendants to venue in the forum of their choice. Indeed, while Congress did explicitly authorize the federal government to bring all conspirators into the same forum regardless of venue, it denied like power from private plaintiffs. See Byrnes, Bringing the Co-conspirator Theory of Venue Up-to-Date and into Proper Perspective, 11 Antitr.Bull. 889 (1966).

■ The adoption of the co-conspirator theory of venue would greatly and unwarrantedly extend the already liberal antitrust venue provisions. Otherwise, one defendant could be sued any place that any one other defendant could be sued, despite the fact that Congress definitely established detailed venue provisions separately applicable to each defendant. It is better that venue as to each and every defendant in an antitrust action be individually established.

■ In conclusion, since neither defendant in this case made sales to plaintiffs in this district, no claim of plaintiffs arose here as against them.

Venue, not having been proved to exist as regards Kilgore and Georgia Sanitary in the Eastern District of Pennsylvania, this Court is left with the choice of either dismissing the action against the two defendants or transferring to a district wherein venue will doubtlessly lie. 28 U.S.C.A. § 1406(a).

And now, to wit, this 9th day of August, A.D.1968, it is hereby ordered that plaintiffs make application to this Court within twenty (20) days to have their actions against Kilgore Ceramics Corporation and Georgia Sanitary Pottery, Inc. transferred to a specifically named federal judicial district wherein venue

can be demonstrated to exist as against said defendants to the satisfaction of the Court. Upon failure to make such application, the Motions of defendants to Dismiss will be granted.

And it is so ordered.