**FREDERICK CINEMA CORP., Plaintiff,**

v.

**INTERSTATE THEATRES CORPORATION, Defendant.**

Civ. A. No. 75–0473.

United States District Court, District of Columbia.

May 17, 1976.

and is engaged in the business of exhibiting first-run motion pictures. Two of the original defendants, Interstate Theatres and R/C Theatres, also own first-run movie theatres in Frederick. The other original defendant, United Artists, is a distributor of motion pictures in the Frederick area. The alleged illegal conspiracy between the defendants limited licensing of United Artists' first run motion pictures in the Frederick area to Interstate Theatres and R/C Theatres, thereby precluding plaintiff from competing for the same motion pictures from United Artists. On July 15, 1975, the complaint was dismissed as to R/C Theatres and United Artists. Presently before the Court is Interstate's motion to dismiss on the grounds that personal jurisdiction over Interstate is lacking and that venue does not lie in the District of Columbia.

Resolution of Interstate's motion requires construction of section 12 of the Clayton Act, 15 U.S.C. § 22, the venue and process provision:

> Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found.

Thus, venue lies in any district where the corporation is an "inhabitant," is "found," or "transacts business." Process, however, can only be served where the corporation is an "inhabitant" or is "found." To establish venue, plaintiff relies solely on defendant's transaction of business within the District of Columbia; there is no contention that defendant is an inhabitant of or is found in the District. *See* Pl.Opp. at 6 n.2.

Stephen M. Trattner, Washington, D. C., for plaintiff.

Norman G. Knopf, Bergson, Borkland, Margolis & Adler, Washington, D. C., for defendant.

## MEMORANDUM AND ORDER

WILLIAM B. JONES, Chief Judge.

This is an action for alleged violations of the Sherman Act, 15 U.S.C. § 1 *et seq.* Particularly, plaintiff alleges a combination in restraint of trade between the three original defendants wherein they agreed to limit licensing of first-run movies in Frederick, Maryland, to two of the defendants. Plaintiff owns three movie theatres in Frederick

■ The question presented, therefore, is whether the contacts which defendant has with the District are sufficient to meet the test of transacting business here within the meaning of the statute.[1] In determining whether a corporation "transacts business"

---

1. Defendant's argument that due process precludes the Court from exercising personal jurisdiction over it can be swiftly disposed of. Section 12 essentially is a long-arm statute, permit-

within a particular district, the applicable test is the "practical, everyday business or commercial concept of doing or carrying on business 'of any substantial character.'" *United States v. Scophony Corp.,* 333 U.S. 795, 807, 68 S.Ct. 855, 862, 92 L.Ed. 1091, 1100 (1948); *see B. J. Semel Associates, Inc. v. United Fireworks Mfg. Co.,* 122 U.S.App. D.C. 402, 355 F.2d 827, 831 (1965).

■ It is uncontested that Interstate neither owns or operates any theatres, nor exhibits any films in the District of Columbia. It is further agreed that Interstate is not qualified to do business in the District, has never had an agent in the District, maintains no corporate books, records, documents, or other materials within the District, and has never had an employee visit the District for business purposes. *See* Sherman Aff. Plaintiff relies principally on the contacts defendant has with film distributors in the District, which contacts are completely telephonic or by letter, and additionally relies on contacts between defendant and a popcorn and candy vendor in the District and a film transporter who delivers films to defendant's theatres in Frederick from distributors in the District.

Initially, it is important to note that none of the contacts between defendant and the District distributors involved sales by defendant to the distributors. Rather, defendant was the lessor of the films which the distributors would send to the Maryland theatres. The manner in which the leasing and booking was carried on is also critical. The basic facts are undisputed. Interstate's Boston office (not the theatres in Maryland) undertook or handled all communications with District distributors. The process of contracting for a film is described by defendant as follows:

> Solomon Sherman, the head film buyer for Interstate Theatres Corporation,

. . . has the sole responsibility for the booking and dating of films with film distributors in the District of Columbia, with the exception that theatre managers are given the latitude to request short subjects and cartoons from the distributors for the managers' respective theatres.

. . . . . .

Those distributors located in the District of Columbia send a contract to Interstate in Boston for Solomon Sherman's signature. The contract stipulates the playing time and terms of the engagement. Mr. Sherman affixes his signature to the contract, retains a so-called "application copy" and returns the original contract to the distributor in the District of Columbia. The distributor, in turn, sends the signed copy of the contract to its home office, which, in most cases, is located either in New York City or Los Angeles, California and is in no case located in the District of Columbia. Approval of the contract must come from the home office, which will then return the contract to its branch office in the District, from which the branch will forward an approved copy of the contract to Interstate in Boston to replace the application copy retained by Interstate.

Answer to Pl's Interrogatory 1(d).

Defendant would have the Court treat the branch office in the District as a "mere conduit" for transmission of messages and contracts between defendant and the distributor's home office. The artificiality of the distributors' corporate structure cannot be the basis of a determination whether defendant was transacting business in the District. Under *Scophony,* the Court should disregard "hair-splitting legal technicalities" in favor of a "practical, everyday busi-

---

ting service of process in a non-forum district, so long as the venue provision is met. This often results in proper venue lying in one district, while service of process is made in another. *See Eastman Kodak Co. of New York v. Southern Photo Materials Co.,* 273 U.S. 359, 373, 47 S.Ct. 400, 403, 71 L.Ed. 684, 689 (1927); *B. J. Semel Associates, Inc. v. United Fire-*

*works Mfg. Co.,* 122 U.S.App.D.C. 402, 355 F.2d 827, 830 n.5 (1965). So long as the forum has minimum contacts with defendant, service of process in another district is not constitutionally deficient. Transaction of business meets the "minimum contacts" test.

ness" view of the transactions at issue. In *B. J. Semel,* for instance, defendant argued that because it communicated with its purchasers in Washington, D. C. by phone, and shipped all its goods F.O.B. Dayton, Ohio, it was not transacting business in the District. The Court of appeals rejected this, stating:

> We however, are unable to believe that the spirit of *Scophony* comports with allowing the seller's shipping practices to determine his amenability to suit under Section 12.

355 F.2d at 831–32. Similarly here, the distributors' decision to locate its home office in one state while maintaining branch offices in the District should not determine whether business is being transacted in the District or in another state. In a practical if not legal sense, the distributors' home office and contracting officials are in the District, negotiating and contracting with Interstate for exhibition of films. It should be noted that it is each distributor's branch office in the District that sends invoices pursuant to the licensing contract to Interstate, and it is the same branch office that receives payment for the invoices from Interstate. *Scophony* and *B. J. Semel* both counsel that defendant's argument be rejected, and this Court holds that the contacts between the distributors and Interstate are contacts taking place within the District.

The question remains whether these contacts are sufficiently "substantial" to constitute "transacting business" within the District. Substantiality "imports continuity—and continuity and total volume tend to be inter-acting." *B. J. Semel, supra* at 832. In the instant case, defendant admits that during a period in 1975, it contracted for exhibition of numerous films at a total cost of over $79,000.[2] In *B. J. Semel,* the Court of Appeals felt that "[b]illings of the order of $70,000 to $100,000 annually are not insignificant in most businesses." 355 F.2d at 830. Defendant argues that the $79,000 figure should be taken within the context

of the industry involved, but affords the Court no comparative figures. In light of the Court of Appeals' approach in *B. J. Semel,* however, it is clear that this dollar figure is well within the test of substantiality.

■  Two of defendant's arguments merit consideration. Defendant first implies that greater contacts are required by courts where those contacts amount to mere purchasing from, as opposed to selling to, the District. It is clear that purchasing *alone* may constitute the transaction of business within the meaning of the statute. *See Fashion Two Twenty, Inc. v. Steinberg,* 339 F.Supp. 836, 841 (E.D.N.Y.1971); *Philadelphia Housing Auth. v. American Radiator & Standard Sanitary Corp.,* 291 F.Supp. 252, 256–57 (E.D.Pa.1968). And other courts have held that purchasing is certainly a factor to be considered in whether a corporation transacts business within the meaning of the statute. *See Crusader Marine Corp. v. Chrysler Corp.,* 281 F.Supp. 802, 804 (E.D.Mich.1968); *United States v. Burlington Industries, Inc.,* 247 F.Supp. 185, 188 (S.D.N.Y.1965). There is nothing in any of these cases to suggest or intimate that greater contacts are required to support a finding that the defendant transacts business in the forum district. To be sure, in *Philadelphia Housing Auth., supra,* the court held the purchases to be insufficient to support venue, but they amounted to only a little over $1,100 in four years for sixteen purchases. In each of the other three cases, although the purchases amounted to well over a million dollars in each case, none of those courts suggested that such figures were minimally required if purchasing alone were the basis for venue. The statute does not imply that a greater showing is required in purchasing cases, and this Court will not imply such a requirement.

Defendant's second, and more troublesome argument, centers around three cases,

---

**2.** Written and telephonic communications during this period totaled more than 164, or an average of more than once every business day. The financial information alluded to in the text

was filed under seal by stipulation between the parties. In response to an inquiry from the Court, defendant has consented to this limited disclosure.

one from this district, dealing with exhibitors' "booking" of films for showing. In *Commonwealth Amusement Enterprises, Inc. v. Colonial Theatres Co.*, 79 F.Supp. 763 (D.Mass.1937), the Court was faced with a defendant that owned two movie theatres in New Hampshire, had a registered agent in New York who negotiated and contracted for exhibition of films with distributors in New York, and in the ordinary course, after the exhibition contract had been signed, sent a representative to Boston to coordinate the distribution of films for its theatres with the distribution point in Boston. The Court relied heavily on the distinction between negotiating and contracting, and the practice of "booking," or coordinating the dates and shipments of films with the distributor:

> Whatever business the defendant does with the producers is fully executed in New York, and the mere fact that it is compelled to come into Boston to arrange for day and date schedules cannot be construed reasonably to mean that it "transacts business" in Boston or within this district.

79 F.Supp. at 764. The Court's holding in *Commonwealth* was followed by Chief Judge Laws of this Court in *Windsor Theatre Co. v. Loew's Inc.*, 79 F.Supp. 871 (D.D. C.1948). It appeared that defendants operated two theatres in Baltimore, receiving their films from six distributors in Washington, D. C. All negotiations and contracts were undertaken in Maryland between the defendants and a salesman of the distributors. Once the contract was executed, it was necessary that defendants enter the District for the purpose of "booking" films, which the Court defined as "setting a specific play date and theatre for the exhibition of films which have been contracted for in the agreement to license." 79 F.Supp. at 872. The Court noted there was no negotiation with regard to these booking

matters, but rather the general manager "merely advises" the distributor of the date and theatre for each film already licensed. Relying entirely on the *Commonwealth* case, and therefore on its distinction between negotiation and "booking," the Court held there was no venue in the District under Section 12.[3]

As described earlier, the customary practice in the instant case finds the defendant, in the "practical, everyday" sense, negotiating and contracting with the distributor in the District. The distributors in the instant case provide more of a service than in *Commonwealth* or in *Windsor Theatres*. Here, they initiate and receive bids for licensing of their films, act as the party through whom all contacts with the home office are had, and send invoices and receive payment from the exhibitors, including defendant. Defendant has pointed to no direct contact that it had with the home office of any of the district distributors; all contacts were, by virtue of the corporate structure of each distributor, with the branch office in the District. And while the contracts were approved only by the home office, in a "practical, everyday" sense they were approved in the District. Certainly if the home office were located in the District, with two or three branches in the District as well, it would be clear that defendant transacted business with the distributors in the District even if the branch office initially received the communications and forwarded them across town to the home office. That such a result would obtain in that factual setting only serves to underscore the artificiality of holding that the same result would not obtain where the home office was located in another state. It being clear that the negotiation and execution of a licensing contract, along with the "booking" aspects of film exhibition, occurred in the District, *Commonwealth* and *Windsor Theatres* are inapposite.

---

**3.** The final case relied upon by defendant, *Metropolitan Theatre Co. v. Warner Brothers Pictures, Inc.*, 16 F.R.D. 391 (S.D.N.Y.1954), while reiterating the principal that "booking" activities are insufficient to support venue, is factually inapposite. There, the Court found that

booking as defined in *Commonwealth* and *Windsor Theatres* was the only contact with the forum, and that the defendant had not even engaged in that practice for over three years prior to the litigation. 16 F.R.D. at 393.

Defendant's motion to dismiss will therefore be denied.[4]

In light of the foregoing, it is this 17th day of May, 1976, without a hearing pursuant to Local Rule 1–9(f),

ORDERED that defendant's motion to dismiss be and the same hereby is denied.

4. In light of the substantiality and continuity of the defendant's contacts with the distributors, it is unnecessary to reach defendant's argument that the Court should not consider the contacts with other business firms, particularly the popcorn and candy vendor and the motor transport firm. Even so, such an argument would have little weight. As stated in *Burlington Industries, supra*, "This court will not place a judicial gloss on the statutory words 'transacts business' to make them read 'transacts business which is the subject matter of this suit.'" 247 F.Supp. at 187.