**Paul C. SOPER and David N. Daoud, Plaintiffs,**

v.

**SIMMONS INTERNATIONAL, LTD., Thonet Industries, Inc., and Xenel Industries Ltd., all Corporations and James A. Riddering, John E. Riederer, Dennis P. Fitzgerald, Manfred J. Sobek, Hisham A. Alireza and Abdullah A. Alireza, Individually, Defendants.**

**Paul C. SOPER and David N. Daoud, Plaintiffs,**

v.

**SIMMONS CO., Simmons U.S.A. Corp., and Simmons Universal Corp., Defendants.**

**Nos. 83–CV–253, 83–CV–688 and 83–CV–527.**

United States District Court, N.D. New York.

Dec. 21, 1983.

Langan, Grossman, Kinney & Dwyer, Syracuse, N.Y., for plaintiffs; Lisa G. Bradley, Richard Grossman, Syracuse, N.Y., of counsel.

Hale & Dorr, Boston, Mass., for defendants Xenel Industries, Ltd., Hisham A. Alireza, and Abdullah A. Alireza; Thomas O'Connor, Boston, Mass., Hancock & Estabrook, James E. Sparks, Syracuse, N.Y., of counsel.

Bond, Schoeneck & King, Syracuse, N.Y., for defendants Simmons Intern. Ltd., Thonet Industries, Inc., James A. Riddering, John E. Riederer, Dennis P. Fitzgerald, Manfred J. Sobek, Simmons Co., Simmons U.S.A. Corp., and Simmons Universal Corp.; Thomas E. Myers, Syracuse, N.Y., of counsel.

## MEMORANDUM–DECISION AND ORDER

MUNSON, Chief Judge.

Paul C. Soper and David N. Daoud filed the instant lawsuit against various defendants charging them with conspiracy to defraud and violations of the federal racketeering laws, 18 U.S.C. § 1961 *et seq.* (1976 & Supp. III 1979). Jurisdiction is predicated upon 28 U.S.C. § 1331, 1332(a) and (c), and 18 U.S.C. § 1964. On September 12, 1983 this court granted defendants' motion to consolidate the three actions pending before the court. Fed.R.Civ.P. 42(a).

Presently before the court is defendants' motion to dismiss the complaint pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure. Alternatively, defendants seek an order pursuant to Rules 9(b) and 12(e) of the Federal Rules of Civil Procedure compelling the plaintiff to file a more definite statement. Additionally, various defendants challenge venue in the Northern District of New York and seek dismissal of the action pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure. Finally, various defendants seek dismissal of the action pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure for want of personal jurisdiction.

These motions were orally argued on September 12, 1983. Following the hearing the court took the matter under advisement and has since reviewed the memoranda of counsel, submitted affidavits, and pertinent cited authority. Based upon the foregoing the court concludes that plaintiffs have properly pleaded a cause of action under the Racketeer Influenced and Corrupt Organizations Act [RICO]. Accordingly, defendants' motion to dismiss plaintiff's second cause of action for failure to state a claim upon which relief can be granted is hereby denied.[1] With respect to defend-

---

1. Defendants have also moved pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss plaintiffs' first cause of action for "conspiracy to defraud." Because of the transfer the court denies this motion without prejudice. The court notes, however, that while there is no substantive tort of conspiracy under New York law, there does appear to be a cognizable tort of "conspiracy to defraud." *See Wegman v. Dairylea Cooperative, Inc.,* 50 A.D.2d 108, 114, 376 N.Y.S.2d 728 (4th Dept.1975); *see also Chase Manhattan Bank, N.A. v. Perla,* 65 A.D.2d 207, 211, 411 N.Y.S.2d 207 (4th Dept.1978).

ants' motion pursuant to Rule 12(b)(3), the court declines to dismiss the action, but instead exercises its discretion and directs that the action be transferred to the Southern District of New York. Because of the transfer defendants' motions to dismiss for lack of personal jurisdiction and for a more definite statement are denied without prejudice.[2]

## FACTS

The plaintiffs, Paul C. Soper [Soper] and David N. Daoud [Daoud], are New York State residents who allege in their various complaints that they are entitled to commissions, pursuant to an oral contract, for arranging a business deal whereby defendant Simmons International, Ltd. would manufacture and sell institutional furnishings to defendant Xenel, a Saudi Arabian family corporation. The defendants, Simmons International, Ltd. [Simmons] and its wholly-owned subsidiary, Thonet Industries, Inc. [Thonet], are Delaware corporations engaged, at least in part, in exporting goods to Saudi Arabia. The individual defendants, Riddering, Riederer, Fitzgerald and Sobek, are officers, employees or agents of Simmons or Thonet. The defendant Xenel Industries, Ltd. [Xenel] is a Saudi Arabian corporation engaged, at least in part, in the business of importing goods in Saudi Arabia. Defendants Hisham A. Alireza and Abdullah A. Alireza are Saudi Arabian citizens and principals of Xenel.

It appears that on February 2, 1977 a representative of Xenel approached Daoud and asked him to locate a possible joint venturer as a source for institutional furnishings to be imported into Saudi Arabia. Daoud contacted Soper, and they targeted Simmons and Thonet as potential prospects for the transaction. A preliminary meeting between Soper and Thonet was held on February 16, 1977 in York, Pennsylvania. The plaintiffs proposed to introduce Simmons and Thonet to Xenel. In return for their services Simmons and Thonet allegedly orally agreed to pay the plaintiffs a commission of 10% on gross sales generated over a ten-year period.

On February 21, 1977 the plaintiffs introduced Simmons and Thonet to Xenel in New York City. Simmons and Thonet proposed to manufacture the institutional furnishings and sell them to Xenel. No agreement was reached, however, because the Xenel defendants requested additional information from Simmons and Thonet. On February 25, 1977 the plaintiffs again met with the Xenel defendants in New York City and Xenel agreed "in principal" to enter into a joint venture with Simmons and Thonet.

Subsequent to February 25, 1977 Simmons, Thonet and Xenel allegedly entered into a written contract whereby Xenel agreed to purchase the institutional furnishings manufactured by Simmons and Thonet. In addition, Simmons, Thonet and Xenel allegedly agreed that Xenel would receive the 10% commission generated on gross sales. Plaintiffs allege that, in furtherance of a conspiracy to defraud plaintiffs of their sales commissions, Simmons, Thonet and Xenel entered into an agreement whereby defendants agreed to eliminate plaintiffs from the deal. The plaintiffs were never paid any commissions.

## DISCUSSION

### A. *The Sufficiency of the RICO Claim*

All the defendants contend that the plaintiffs' RICO claim is fatally defective and fails to set forth the requisite factual allegations and legal elements. The court finds these challenges without merit.

■ To state a claim for damages under RICO, a plaintiff has two threshold pleading burdens. First, he must allege that the defendant violated a substantive criminal provision of the RICO statute. *See* 18 U.S.C. § 1962 (1976). Second, he must allege facts which establish the existence of seven constituent RICO elements: (1) that

---

**2.** The motions not treated in this opinion may be properly noticed and argued in the Southern District of New York.

the defendant (2) through the commission of two or more acts (3) constituting a pattern of (4) racketeering activity (5) directly or indirectly invests in, or maintains an interest in (6) an enterprise (7) the activities of which affect interstate commerce. *See Moss v. Morgan Stanley Inc.*, 719 F.2d 5 (2d Cir.1983). Despite the fact that RICO was enacted in a multifaceted campaign against the pervasive presence of organized crime in America, the Second Circuit recently held in *Moss* that the statute does not premise a RICO violation on proof or allegations of any connection with organized crime. *Id.*

In determining whether the plaintiffs have stated a claim upon which relief can be granted, the court accepts as true all material factual allegations in the complaint, and construes the complaint in favor of the complaining party. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Green v. Maraio*, 722 F.2d 1013 (2d Cir.1983). Dismissal under Rule 12(b)(6), Fed.R.Civ.P., is not warranted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson, supra*, 355 U.S. at 45–46, 78 S.Ct. at 101–02. It is with these principles in mind that the court turns to the defendants' claim that the plaintiffs' RICO cause of action is deficient.

■ A cursory reading of plaintiffs' complaint reveals that the constituent elements of a RICO claim have been properly pleaded. The defendants are alleged to be a group of business associations who shared the common purpose of defrauding the plaintiffs of their commissions. Mail, telephone and wire services are alleged to have been utilized to carry out the scheme to defraud. The predicate facts with respect to an enterprise or pattern of racketeering activity are sufficiently pleaded to overcome a motion to dismiss. The court finds that the complaint adequately sets forth sufficient facts to satisfy the *Conley* standard. This finding, of course, does not represent a ruling as to the substantive merit of plaintiffs' claim. The court's purpose here is merely to ascertain whether a cause of action has been validly pleaded. Accordingly, defendants' motion to dismiss for failure to state a claim upon which relief can be granted is hereby denied.

**B. *The Propriety of Venue in the Northern District of New York***

[3] Having concluded that plaintiffs have validly pleaded a cause of action under RICO, the court directs its attention to the propriety of venue in the Northern District of New York.

Title 18 U.S.C. § 1965(a) provides for venue as follows:

> Any civil action or proceeding under this chapter against any person may be instituted in the district court of the United States for any district in which such person resides, is found, has an agent, or transacts his affairs.

Under § 1965 of the RICO statute there is no question that venue is inappropriate in the Northern District of New York. Plaintiffs' verified complaint conclusively establishes that none of the defendants reside in the Northern District of New York. The affidavits of service which plaintiffs have filed indicate that none of the individual defendants are or were found within the Northern District of New York. None of the defendants have an agent or transact business in the Northern District of New York.

Plaintiffs apparently concede that venue is lacking under the RICO venue provision. Rather, plaintiffs argue that the applicable venue provision is 28 U.S.C. § 1391(b) (1976), which provides for venue as follows:

> A civil action wherein jurisdiction is not founded solely on diversity of citizenship may be brought only in the judicial district where all defendants reside, or in which the claim arose, except as otherwise provided by law.

The phrase "in which the claim arose" is simpler in its statement than in its operation. *See* 1 *Moore's Federal Practice*

¶ 0.142[5.–2] at 1423–35 (2d ed. 1983). In determining where a claim arises, federal law governs. *Leroy v. Great Western United Corp.*, 443 U.S. 173, 183 n. 15, 99 S.Ct. 2710, 2716 n. 15, 61 L.Ed.2d 464 (1979). The legislative history behind the 1966 amendment to section 1391, adding the claim arising provision, is sparse. The Senate Report on the bill consisted of an uninformative quote from the House Report containing a statement to the effect that its purpose was to provide a place of suit more convenient to all parties than was allowed previously.[3] *See* S.Rep. No. 1752, 89th Cong., 2d Sess. 1–2 (1966), U.S.Code Cong. & Admin.News 1966, pp. 3693, 3694. The legislative history provides little insight into what is meant by "where the claim arose." The Supreme Court in interpreting that statement has stated that Congress amended section 1391 to close the venue gap that occasionally confronted plaintiffs before that time by assuring them at least one proper district. *Leroy, supra*, 443 U.S. at 184 and n. 17, 99 S.Ct. at 2717 and n. 17 (citing *Brunette Machine Works v. Kockum Industries*, 406 U.S. 706, 710, 92 S.Ct. 1936, 1939, 32 L.Ed.2d 428 (1972).[4] *See also* 1 *Moore's Federal Practice* ¶ 0.142[5.–2] at 1433–34 (2d ed. 1983) (apparent purpose of the 1966 amendment was "to assure at least one venue that will be proper as to all defendants and all plaintiffs in a multi-party action").

The courts faced with the problem of deciding where a claim arises for purpose of venue have fashioned what may be called a "weight of contacts" approach:

> [I]f venue gap filling was Congress' only purpose in amending Sections 1391(a) and (b), it would appear that any given cause of action should be deemed to arise

in only one district, since at that point the venue gap would be filled. And the most suitable analytical tool for determining in which district venue should lie would seem to be the "most significant contacts" or "weight of contacts" approach. *See Philadelphia Housing Authority v. American Radiator & Standard Sanitary Corp.*, 291 F.Supp. 252 (E.D.Pa.1968).

*Cheeseman v. Carey*, 485 F.Supp. 203, 213 (S.D.N.Y.1980), *remanded on other grounds*, 623 F.2d 1387 (2d Cir.1980). The *Leroy* Court also seemed to employ the weight of contacts test.[5] While other tests exist, a majority of courts have adopted this approach in determining where the claim arose. *See, e.g., Commercial Lighting Products, Inc. v. United States District Court*, 537 F.2d 1078, 1080 (9th Cir. 1976); *Ghazoul v. International Management Services, Inc.*, 398 F.Supp. 307, 315 (S.D.N.Y.1975); *Honda Associates, Inc. v. Nozawa Trading, Inc.*, 374 F.Supp. 886, 892 (S.D.N.Y.1974); *Fox-Keller, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 338 F.Supp. 812, 816 (E.D.Pa.1972); *California Clippers, Inc. v. United States Soccer Football Association*, 314 F.Supp. 1057, 1063 (N.D.Cal.1970); *ABC Great States, Inc. v. Globe Ticket Co.*, 310 F.Supp. 739, 743 (N.D.Ill.1970). *See generally* Comment, *Federal Venue: Locating the Place Where the Claim Arose*, 54 Tex.L.Rev. 392, 403–15 (1976).

In the present case the factors to be weighed under the weight of the contacts test include location of the conspiratorial meetings, overt acts, or other events relating to the alleged conspiracy to defraud; residence of the parties and the place of

---

**3.** The Senate Report on the bill consisted of the following language: "This enlargement of venue authority will facilitate the disposition of both contract and tort claims by providing, in appropriate case, a more convenient forum to the litigants and the witnesses involved."

**4.** For a fuller discussion of the legislative history of § 1391(b), *see Lamont v. Haig*, 590 F.2d 1124, 1133–34 (D.C.Cir.1978).

**5.** The Court rejected the Fifth Circuit's "place of impact" approach to determining where the claim arose. 443 U.S. at 186, 99 S.Ct. at 2718. The Court implied its approval of the "weight of the contacts" approach in its statement that the "'contacts' between the 'claim' and Texas District fall far short of those connecting the claim and the Idaho District." *Id.*

the injury. *See Philadelphia Housing Authority, supra,* 291 F.Supp. at 260–61. The last factor (place of injury), while important, is not determinative. *Id.* at 260.[6] *See Leroy, supra,* 443 U.S. at 186, 99 S.Ct. at 2718 (rejecting the lower court's place of impact test); *Redmond v. Atlantic Coast Football League,* 359 F.Supp. 666, 669 (S.D.Ind.1973).

The facts in the present case, as developed in the pleadings and affidavits at bar, make it manifest that the "weight of contacts" for venue purposes lies in the Southern District of New York. There are absolutely no contacts with the Northern District of New York except that plaintiffs allege that the impact of the conspiracy is felt in this district. Most of the material events surrounding the alleged conspiracy occurred in the Southern District of New York. After the initial meeting of February 16, 1977 in York, Pennsylvania, the plaintiff met with defendants on three occasions in New York City, within the Southern District of New York. The meeting where the plaintiffs introduced Simmons and Thonet to Xenel was conducted at the Sherry Netherlands Hotel in New York City.

As indicated above, some overt acts are alleged to have occurred in districts other than the Southern District of New York, but the court finds that they do not reach the same significance as those in the Southern District of New York. *Leroy* acknowledged that a claim may arise in more than one district, but warned that "Congress did not intend to give [the plaintiff] an unfettered choice among a host of different districts." 443 U.S. at 185, 99 S.Ct. at 2717 (citation omitted). The Court laid down the following test for multidistrict venue cases:

> [T]he broadest interpretation of the language of § 1391(b) that is even arguably acceptable is that in the unusual case in which it is not clear that the claim arose in only one specific district, a plaintiff may choose between those two (or conceivably even more) districts that with approximately equal plausibility—in terms of the availability of witnesses, the accessibility of other relevant evidence, and the convenience of the defendant (but *not* of the plaintiff)—may be assigned as the locus of the claim.

*Id.* (citation and footnote omitted; emphasis in original).

In the instant case, therefore, even assuming that plaintiff's claim arose in more than one district, venue is still proper in the Southern District of New York. While the plaintiff makes the initial choice between districts, the *Leroy* Court's test requires court review as to whether districts of "equal plausibility" exist. Under the *Leroy* test the three potentially competing districts in this case are not of equal plausibility. Accordingly, in the interest of justice the court transfers this action to the Southern District of New York where plaintiffs' claim arose and where venue is proper as to all parties. 28 U.S.C. § 1406(a) (1976). The clerk of this court shall take all necessary steps as soon as possible to effectuate such a transfer.

It is so Ordered.

---

**6.** The *Lamont* Court concluded upon its review of the legislative history behind § 1391(b) that the section has a practical orientation and "counsels against adherence to mechanical standards in its application." 590 F.2d at 1134. *Cf.* the *Lamont* Court's standard: "[W]here 'the claim arose' should in our view be ascertained by advertence to events having operative significance in the case, and a commonsense appraisal of the implications of those events for accessibility to witnesses and records." *Id.* (footnote omitted).